Robert LYON, Dennis S. Lebofsky, H. Frank Thornton and Nicholas Macri

v.

TEMPLE UNIVERSITY OF the COMMONWEALTH SYSTEM OF HIGHER EDUCATION, Marvin Wachman, in his official capacity as President of Temple University and American Association of University Professors, Temple University Chapter.

Civ. A. No. 79–409.

United States District Court,
E. D. Pennsylvania.

July 30, 1982.

See also D.C., 507 F.Supp. 471.

Frank Finch, III, Stephen A. Sheller, Philadelphia, Pa., for plaintiffs.

Matthew M. Strickler, Jill A. Douthett, Philadelphia, Pa., for Temple University of the Commonwealth System of Higher Education and Marvin Wachman.

Miriam L. Gafni, Gafni & Goldstein, Philadelphia, Pa., for American Ass'n of University Professors, Temple University Chapter.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiffs, male professors at Temple University ("Temple"), allege that Temple, university president Marvin Wachman,[1] and the American Association of University Professors ("AAUP") have jointly and willfully discriminated against them on the basis of sex by paying them lower salaries than those paid to female professors of less or equal educational qualifications and/or experience. Plaintiffs originally charged defendants with violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1983, 1985 and 1986; the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*; and the Pennsylvania Equal Rights Amendment, Article I, § 28 of the Pennsylvania Constitution. Plaintiff Robert Lyon also claimed a conspiracy among the defendants to inflict emotional distress upon him in violation of Pennsylvania law.

On January 15, 1981, we dismissed the Equal Pay Act, § 1985(3) and § 1986 claims against the AAUP, 507 F.Supp. 471 (E.D. Pa.1981), because the Equal Pay Act does not create a private right of action against a union, and cannot be the basis for § 1985(3) or § 1986 claims. Defendants now move for summary judgment as to all remaining counts.

The complaint alleges that the 1973–1976 collective bargaining agreement between Temple and AAUP included a clause, Article III, Paragraph E, which provided for the redressment of existing wage inequities based on race or sex for faculty members at

---

1. Defendant Wachman was sued in his official capacity as President of Temple University. Because he no longer holds that position, the parties will presumably stipulate to his dismissal as a party defendant.

Temple. The purpose of Article III, Paragraph E was "to identify and correct any existing faculty salary inequities based on sex or race" (¶ 19) and "(1) to develop a comprehensive system for determining any internal inequities affecting women or minority faculty members; (2) to guide and advise departmental faculties, chairpersons and deans on redressing any such inequities; and (3) to hear appeals from persons who are dissatisfied with redressment decisions of departmental faculties, chairpersons and deans." (¶ 18). Pursuant to this provision, the faculty of the various schools and colleges at Temple reviewed the salaries of females and minority faculty members and awarded increases to those found to be entitled to this type of redressment. Male faculty who were not members of a minority were not eligible for these salary increases under Article III, Paragraph E.

Plaintiffs claim the implementation of Article III, Paragraph E, resulted in substantial discrepancies in salaries between plaintiffs and certain females in their departments; these women are alleged to be equally or less qualified or to have less experience than plaintiffs. For example, plaintiff Lyon alleges that he was hired at Temple in 1957 and has been a tenured professor since 1963 but as of September 1, 1978 he was earning approximately $3,200 less than a female in his department who was hired in 1967 and promoted to associate professor in 1971. Plaintiffs Lebofsky, Thornton and Macri have alleged similar discrepancies in salary when compared with females within their departments.

## I. TEMPLE'S MOTION [2]

### A. *The Equal Pay Act Claim*

■ The Equal Pay Act ("EPA") forbids wage inequality based on the sex of the employees. Enacted in 1963, it provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

For the purpose of this motion, Temple concedes that, because of their sex, certain female employees receive higher salaries than their male plaintiff counterparts. Temple's Reply Brief at 4. The question is whether these wage inequities are justified as affirmative action permitted by *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). It is contended that seeming violations of the EPA are excused as necessary to remedy past discrimination against female professional employees.

In *Weber*, the Supreme Court decided that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,[3] did not bar

---

**2.** The motion of defendants Temple and Wachman will be referred to as the "Temple motion."

**3.** Title VII provides in relevant part:
    (a) . . . It shall be an unlawful employment practice for an employer—
      (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
      (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive

an employer and union from voluntarily agreeing to a "race-conscious affirmative action" plan in order to expand the number of skilled black craftworkers in its workforce. Kaiser Aluminum & Chemical Corp. had entered into an agreement with the United Steelworkers of America that set black craftworker hiring goals for each Kaiser plant in accordance with the percentage of blacks in the respective local labor forces. To reach these goals, Kaiser agreed to set aside one-half of the openings in each plant's training program until the desired percentage of skilled craftworkers for each plant was reached. 443 U.S. at 197, 99 S.Ct. at 2724. Plaintiffs contended, and the district court found, that the plan resulted in black employees receiving training instead of white employees with greater seniority, and that this constituted discrimination prohibited under Title VII. *Id.* at 199–200, 99 S.Ct. at 2725–2726.

The Court held that Title VII does not ban race-conscious affirmative action plans *per se.* Reviewing the legislative history of the Act, it concluded that "Congress did not intend to limit traditional business freedom to such a degree as to prohibit all voluntary, race-conscious affirmative action." *Id.* at 207, 99 S.Ct. at 2729. Without defining the line between permissible and impermissible affirmative action, the court held the plan at issue lawful because it did not "unnecessarily trammel the interests of the white employees." *Id.* at 208, 99 S.Ct. at 2729.

The holding in *Weber* as to Title VII is not equally applicable to the Equal Pay Act in view of the difference in language. *Weber*, of course, never referred to the EPA; the court chose to "emphasize at the outset the narrowness of our inquiry"— whether Title VII forbids employers and unions from agreeing to plans that accord racial preferences to compensate for past discrimination. *Id.* at 200, 99 S.Ct. at 2726. A comparison of Title VII and the EPA, and of the Kaiser-USWA plan and the Temple-AAUP plan, demonstrate why we cannot infer that the principles of *Weber* should be applied to these facts.[4]

The stated purpose of Title VII is to "eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment based on race, color, religion, or national origin." H.R. Rep. 914, 88th Cong., 1st Sess., at 26 (1963). The broad purpose of this title—elimination of discrimination with respect to all aspects of hiring, firing, and conditions and terms of employment—contrasts with the more narrow focus of the EPA. That Act seeks to eliminate economic and social evils caused by wage differentials based on sex. Public Law 88–38 (1963), 77 Stat. 56, § 2. While the Supreme Court has found that Title VII leaves an "area of discretion" to employers to adopt voluntary plans to remedy past discrimination, no need for such an area of discretion has been demonstrated here as yet. Temple has made no showing of need to discriminate against men in order to remedy any previous wage discrimination against female Temple professors. *See* Affidavit of Marvin Wachman, Dkt. Ent. No. 82, ¶¶ 4 and 5 and Exhibits A and B.

In *Weber*, the court found that, in order to remedy the past discrimination against blacks in training and hiring, it was necessary to deny places in the training programs temporarily to some whites who would otherwise have gained entry into those programs. If Kaiser had continued to determine admissions on a seniority basis alone, "old patterns of racial segregation and hierarchy" would have been perpetuat-

---

any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e-2(a).

    It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training pro-

grams to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.
42 U.S.C. § 2000e-2(d).

4. The court is not aware of any case approving an affirmative action exception to the EPA.

ed. 443 U.S. at 208, 99 S.Ct. at 2729. In contrast, an employer seeking to rectify existing wage inequality need not permanently pay less wages for equal work to one sex than to the other. The employer may employ an affirmative action plan that provides a one time compensatory payment, confers salary increases to females only, or raises the salary of female employees more than male employees, and still not have resulting salary levels that permanently differentiate on account of sex. Here, plaintiffs complain that after the raises given by the University to correct past inequities, they are at an unnecessary and *permanent* salary disadvantage compared with female employees having like or lesser skills or responsibilities.[5]

This permanence of the salary differentials alleged also distinguishes this case from *Weber*. While the Kaiser affirmative action plan necessarily disadvantaged some employees, it was designed to do so only until the past discrimination was remedied. *Weber*, 443 U.S. at 208–209, 99 S.Ct. at 2729–30. For purposes of this motion, the Temple-AAUP plan results in permanent inequality even if subsequent agreements grant raises nondiscriminatory as to sex.

We have found no post-*Weber* case that has considered whether an affirmative action plan resulting in higher pay for women than for men, because of the employee's sex, violates the EPA. In *Board of Regents of the University of Nebraska v. Dawes*, 522 F.2d 380 (8th Cir. 1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976), an action for declaratory judgment decided prior to *Weber*, pay differentials between male and female professional employees resulted from a minimum pay schedule for female employees only; it was proved that many men with substantially equivalent education, experience and merit

had lower salaries. The court held that such an affirmative action plan violated the EPA. *Id.* at 383–84. For the reasons stated above, *Weber* does not adversely affect the authority of *Dawes*.

### B. The § 1983 Claim

Anyone acting under the color of state law subjecting or causing any citizen to be subjected to the deprivation of any rights, privileges or immunities secured by the Constitution and laws of the United States is liable in damages to such citizen under 42 U.S.C. § 1983. We have already held that Temple is a state agency. 507 F.Supp. at 477–78. Because a § 1983 action may be based on the violation of any federal statute, *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), if summary judgment is denied on the EPA claim, it cannot be granted on the § 1983 claim.

### C. The § 1985(3) and § 1986 Claim

The reasons stated in the Order of July 15 dismissing the claims brought against the AAUP under 42 U.S.C. § 1985 and § 1986 are applicable to Temple's summary judgment motion on those counts. For the reasons stated therein, Temple will be granted summary judgment on these claims. *See* 507 F.Supp. at 478–79.

### D. Pendent Claims

Temple seeks summary judgment on plaintiffs' claims under the Pennsylvania Human Relations Act ("the Act"), 43 P.S. § 951 et seq., on the ground that plaintiffs have failed to exhaust their remedies thereunder. The Act does provide for administrative review of complaints, (§ 959), and mandates that relief under the Act must be sought solely through this process unless certain conditions have been met. (§ 962).

---

5. Defendants argue that plaintiffs, until the filing of this motion, have complained only of the facial validity of the contract clause establishing the program and not of the actual results of the plan. However, plaintiffs' pretrial memorandum, filed April 15, 1981, complains of the "resulting salary differential between plaintiffs and the female workers with whom they compare themselves...." *See, e.g.,* ¶¶ 3, 4, 5. Clearly, plaintiffs are concerned not only with the plan's validity in the abstract but with its actual application in regard to them. They contend the pay rates after redressment violate the express language of the Act and discriminate against them.

Section 962(c) provides that where the Commission has not resolved an administrative complaint within a year of its filing with the Commission, the plaintiff may bring court action. *See Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980).

■ Plaintiff Lyon concedes that he did not comply with the Act's administrative procedures; plaintiffs' brief at 28. Therefore, he is barred from pursuing a claim under the Act in this forum. Temple's motion for summary judgment as to Lyon's Human Relations Act claim will be granted. *Smith v. Anchor Motor Freight Co.*, 428 F.Supp. 21 (M.D.Pa.1976).

■ All plaintiffs except Lyon have placed on the record evidence that they have instituted the requisite state or local (see § 962.1(d)) administrative actions against Temple and over a year has elapsed in each case without resolution. (Macri Deposition, Exhibit No. 11, pp. 23–25; Lebofsky Deposition Exhibit No. 9, pp. 43–44). Temple continues to assert noncompliance with the Act and may present such evidence at trial; however, its motion for summary judgment as to Lebofsky, Thornton and Macri is denied.

All plaintiffs have brought claims under the Pennsylvania Equal Rights Amendment.[6] We question whether this Amendment confers a private right of action for damages. Plaintiffs have not cited, and we are not otherwise aware, of any cases that consider awarding damages for alleged violations of the Amendment. Creating even greater uncertainty is the analogous rule in the federal context: "the existence of an effective and substantial federal [antidiscrimination] statutory remedy for the plaintiffs obviates the need to imply a constitutional remedy on the plaintiffs' behalf . . . ." *Mahone v. Waddle*, 564 F.2d 1018, 1024–25 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978) (finding that 42 U.S.C. § 1981 afforded plaintiffs' legal redress, making unnecessary a consti-

tutional determination). The Pennsylvania Human Relations Act recognizes the opportunity for an individual to obtain employment free of sexual discrimination and declares it to be a civil right enforceable as set forth in the Act; 43 P.S. § 953. This substantial state statutory remedy available to all the plaintiffs counsels against federal court consideration of whether or not to imply a state constitutional remedy for them. If a state remedy is available, the fact that one plaintiff chose not to utilize it should not necessitate a federal hearing for this claim.

■ A federal court "usually should" hear pendent state claims if by so doing it can avoid federal constitutional questions, *Gagliardi v. Flint*, 564 F.2d 112, 114 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), but here it is argued that the federal court should hear state constitutional claims when a state statutory remedy is available. There are difficulties inherent in a trial with four plaintiffs against two defendants with § 1983 claims against both defendants, Equal Pay Act claims against one defendant, pendent statutory claims by three plaintiffs against one defendant, and a pendent common law claim by one plaintiff against both defendants. This suggests the wisdom of refusing to entertain in addition novel claims for violation of the Pennsylvania ERA against either defendant. *See Marchwinski v. Oliver Tyrone Corp.*, 461 F.Supp. 160, 171–73 (W.D.Pa.1978).

■ Because there exists a substantial state statutory remedy for discrimination, because there is no state law establishing a cause of action for damages under the ERA, and because there are as yet no clear state standards for liability and damages if there were such a cause of action for sexual discrimination in employment, we decline to exercise pendent jurisdiction over these claims.

■ The final pendent claim is that of Lyon for intentional infliction of emotional

---

**6.** "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pennsylvania Constitution, Art. 1 § 28.

distress. Temple contends that the claim is barred by the applicable statute of limitations, which is two years; 42 Pa.C.S.A. § 5524(2) (governing actions "to recover damages for injuries to the person...."). This complaint was filed January 31, 1979, and at least some of the incidents complained of occurred within the two-year period (the acts of "vandalism" of Lyon's office door are alleged to have continued until March of 1979; Deposition of Lyon, May 1, 1979, N.T. 118). While Temple asserts it had nothing to do with any harassment that might have occurred, and discovery to date of the motion has not established such involvement, the alleged intent of Temple officials to cause this harassment would be difficult for plaintiff to prove prior to trial, and is therefore inappropriate for summary judgment. *See Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); Wright and Miller, *Federal Practice and Procedure* § 2730 (1973).

## II.  AAUP'S MOTION

### A.  *The § 1983 Claim*

Our prior opinion on the AAUP motion to dismiss found that Temple is a state agency for purposes of § 1983, and that the "complaint also sufficiently alleges a concerted action between AAUP and Temple to assert a claim for relief against AAUP under § 1983." 507 F.Supp. at 477. Having found the requisite state action, however, we stated that because "plaintiffs have no cause of action under the Equal Pay Act" against the AAUP, the only predicate for § 1983 liability perceived by the court to implicate the AAUP would be violation of a constitutional right guaranteed by the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 477–78.

■ Generally, sex-based discrimination "not supported by reasonable justifications, [is] invalid under the Equal Protection Clause and the right to be free from such unconstitutional discrimination can be protected by § 1983 actions." Antieau, *Federal Civil Rights Acts*, § 200 (1980). Section 1983 permits an action to redress unconstitutional sex discrimination in the employment context as well as in other areas. *See, e.g., Harless v. Duck*, 619 F.2d 611 (6th Cir.), *cert. denied*, 449 U.S. 872, 101 S.Ct. 212, 66 L.Ed.2d 92 (1980) (police department hiring); Antieau, *supra*, § 192 (citing cases).[7]

*Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), holding unconstitutional a state statute requiring that the mother but not the father of an out-of-wedlock child consent to its adoption, establishes that males are entitled to Fourteenth Amendment protection against gender distinctions that do not "serve important governmental objectives and [are not] substantially related to achievement of these objectives." *Id.* at 388, 99 S.Ct. at 1765. The University contends that the record demonstrates its affirmative action plan serves an important objective—redressment of past wage discrimination against professional employees of Temple University and universities in general. *See, e.g.,* Affidavit of Marvin Wachman, Dkt. Ent. No. 82, ¶¶ 4 and 5 and Exhibits A and B; Appendix Accompanying Motion of Temple and Wachman, Dkt. Ent. No. 83, Exhibits 1a–7a.

■ But defendants did not introduce undisputed evidence establishing that redressment of past discrimination could have not been accomplished without creating new salary inequities. Therefore, the substantial relation of the plan to achievement of important objectives must be determined

---

7. The AAUP contends that complaints alleging denial of equal pay on the basis of sex are governed by federal statute and that constitutional principles are inapplicable. But of course such principles are applicable if state action is present. In the case cited by the AAUP, *Northwest Airlines v. Transport Workers Union, AFL CIO*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), the court states that "the liability of petitioner for discriminating against its female cabin attendants is entirely a creature of federal statute." *Id.* at 97, 101 S.Ct. at 1583. The statute referred to was Title VII not § 1983; no state action was averred in that complaint and § 1983 was never at issue.

at trial. We agree with *Baker v. City of Detroit*, 483 F.Supp. 930 (E.D.Mich.1979), that "... a voluntary affirmative action plan which passes muster under *Weber* should also pass muster under the Constitution," *id.* at 991; however, *Weber* requires a showing that the affirmative action plan "does not unnecessarily trammel the interests" of the plaintiffs. 443 U.S. at 208, 99 S.Ct. at 2729. In *Parker v. Baltimore & Ohio R. R. Co.*, 652 F.2d 1012 (D.C.Cir.1981), the Court of Appeals reversed the district court's grant of summary judgment under *Weber* because the state of the record was not yet factually adequate to make this finding. We are likewise unable to determine on the present record in this case whether it is necessary for some female employees' salaries to be raised higher than those of their male counterparts and, if so, for how long and whether this unduly trammels plaintiffs' interests.[8] Therefore, summary judgment must be denied.

## B. *The Pendent Claims*

■ All plaintiffs concede that their complaints filed with state or local Human Relations Commissions did not join AAUP as a defendant. Plaintiffs' Brief at 28, footnote. They failed to comply with requirements of the Act. *Smith v. Anchor Motor Freight Co., supra.*

Plaintiffs cite *Glus v. G. C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977), *cert. denied*, 449 U.S. 949, 101 S.Ct. 351, 66 L.Ed.2d 212 (1980), as supporting joinder of the AAUP on this claim "despite the fact it was not charged administratively." *Glus* involved Title VII rather than the Pennsylvania Human Relations Act; the question there was whether an international union could be sued where only its local had been charged before the Equal Employment Opportunity Commission. The case was remanded to the district court to determine whether compliance with administrative procedures was necessary if, *inter alia*, the unnamed party in some way "represented to the complainant that its relationship with the complainant [was] to be through the named party." *Id.* at 888. Clearly, the facts of this case bear no relation to those of *Glus.* The AAUP motion for summary judgment on the Pennsylvania Human Relations Act claims is granted as to all plaintiffs.

For the reasons stated in dismissing without prejudice plaintiffs' claims against Temple under the Pennsylvania ERA, such claims against the AAUP will be dismissed.

For the reasons stated in denying Temple's motion for summary judgment, AAUP's motion for summary judgment on the ground that the claim of Lyon for intentional infliction of emotional distress is barred by the statute of limitations will be denied.

## III. CONCLUSION

The following claims against Temple remain to be tried in this proceeding: Equal Pay Act and § 1983 claims of all plaintiffs; Pennsylvania Human Relations Act claims

---

8. Subsequent to argument and briefing the AAUP submitted a letter discussing *La Riviere v. Equal Employment Opportunity Commission, et al.*, 28 F.E.P. Cases 1481 (9th Cir. 1982), in support of its contention that *Weber* permits its redressment plan. The Court of Appeals there reversed the district court's grant of summary judgment for the plaintiff, a male who was denied entry into a program testing the feasibility of employing female officers for the California Highway Patrol (CHP), and ordered judgment entered for the defendants.

This case merely highlights the distinctions between a plan permissible under *Weber*, and the Temple-AAUP plan on this record. In *La Riviere*, the court directed judgment because uncontested facts demonstrated that the plan did not harm males currently in the work force, nor did it unnecessarily harm male Highway Patrol *applicants*, because: 50% of the program's participants were male; there was no subsequent impediment to male advancement; and the plan was of temporary duration. It was not "intended to maintain [sexual] balance in the work force, *Weber*, supra, 433 U.S. at 208, 99 S.Ct. at 2729, but rather was intended to determine the feasibility of eliminating the principal restriction which had created the sexually imbalanced work force in the first place." 28 F.E.P. Cases at 1485. Temple's plan does not appear to have any non-minority male participants and while the redressment was a one-time adjustment, the salary adjustments are alleged to have indefinite, continuing discriminatory effect. This difference in the Temple plan precludes the grant of summary judgment.

of Lebofsky, Thornton and Macri; and the intentional infliction of emotional distress claim of Lyon. Pending against AAUP are § 1983 claims of all plaintiffs and the claim for intentional infliction of emotional distress of Lyon. Whether or not all claims or the Equal Pay Act claims against the University should be severed for trial, whether or not the Equal Pay Act claims of all plaintiffs and Human Relations Act claims of three plaintiffs should be severed from the claim for emotional distress of only one plaintiff, and other methods of framing the issues for trial will be considered in consultation with counsel at the final pretrial conference.

### ORDER

AND NOW, this 30th day of July, 1982, upon consideration of the Motions for Summary Judgment of defendants Temple University ("Temple"), Marvin Wachman ("Wachman") and the American Association of University Professors ("AAUP"), plaintiffs' response thereto, and defendants' reply, for the reasons stated in the accompanying memorandum, it is ORDERED that:

1. The motion of defendants Temple and Wachman is GRANTED as to:
   a. Plaintiffs' claims under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986; and
   b. Plaintiff Lyon's claim under the Pennsylvania Human Relations Act.

2. The motion of defendants Temple and Wachman is DENIED as to:
   a. Plaintiffs' claims under the Equal Pay Act of 1963 and 42 U.S.C. § 1983;
   b. Plaintiffs Lebofsky, Thornton, and Macri's claims under the Pennsylvania Human Relations Act; and
   c. Plaintiff Lyon's claim for intentional infliction of emotional distress.

3. The motion of defendant AAUP is GRANTED as to Plaintiffs' claims under the Pennsylvania Human Relations Act.

4. The motion of defendant AAUP is DENIED as to:
   a. Plaintiffs' claims under 42 U.S.C. § 1983; and
   b. Plaintiff Lyon's claim for intentional infliction of emotional distress.

5. Plaintiffs' claims under the Pennsylvania Equal Rights Amendment are DISMISSED WITHOUT PREJUDICE as to all defendants.

6. The parties shall prepare and file a proposed joint final pretrial order in accordance with Local Rule 21(d)(2) on or before *September 29, 1982.* Counsel for plaintiffs shall be responsible for initiating the procedures necessary for preparation. The parties' responsive statements of proposed stipulated facts filed pursuant to the Order of July 24, 1981 should be supplemented and revised for trial purposes as necessary in preparing the proposed final pretrial order.

7. A final pretrial conference will be held on *November 18, 1982,* at *4:00 p.m.*