566 A.2d 1235

**Gerald A. SNYDER, Appellant,**

v.

**PENNSYLVANIA ASSOCIATION OF SCHOOL RETIREES, Appellee.**

Superior Court of Pennsylvania.

Argued April 18, 1989.

Filed Dec. 1, 1989.

Robert S. Mirin, Harrisburg, for appellant.

Michael L. Solomon, Harrisburg, for appellee.

Before ROWLEY, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

This case involves an appeal by the plaintiff/appellant, Gerald A. Snyder, from the August 29, 1988, order[1] of the Court of Common Pleas of Dauphin County sustaining a preliminary objection raising a question of jurisdiction. We affirm in part and reverse in part.

Following the presentment of a praecipe for the issuance of a writ of summons and a rule to file a complaint by the plaintiff and the defendants,[2] respectively, a complaint was filed on January 11, 1988. Therein, it was alleged that the plaintiff applied for the position of executive director of the Pennsylvania Association of School Retirees (PASR) after reading about the opening in the PASR's summer newsletter for 1985.

The plaintiff was interviewed for the job in November of 1985, and, within a short time thereafter, was notified that he was not selected to fill the vacancy. It was the plaintiff's belief that the "age" of the prospective candidates (five males to one female) was among the "prime factors" considered by the PASR selection committee, and that PASR "arbitrarily designated sex-female" as a criterion for the job. As a result, on or about February 3, 1986, the plaintiff submitted a complaint to the Pennsylvania Human

1. Albeit the appellee, the Pennsylvania Association of School Retirees, filed an 8–count response in the form of preliminary objections, only the first and second counts aver the exclusivity of the Pennsylvania Human Relations Commission (PHRC) to hear the "age and sex" discrimination, as well as the "retaliation" charge, lodged by the appellant against the appellee. Since the lower court's resolution of the matter at issue was premised solely upon the exclusivity of the PHRC to dispose of the dispute, we need address only that issue.

2. The defendants named in this lawsuit consist of the Pennsylvania Association of School Retirees, its officers, board of directors and personnel committee, individually and in their official capacity.

Relations Commission (PHRC) charging the defendants with age and sex discrimination.[3]

Additionally, the plaintiff averred that during April of 1987, the PASR replaced its executive director without contacting him for the post, or without ascertaining his interest in and/or availability for the position. This, the plaintiff contended, constituted a continuing course of conduct premised upon his age and sex, and that such (in)action on the part of the PASR was in "retaliation" for the pursuit of his legal remedies before the PHRC and the federal Equal Employment Opportunity Commission (EEOC).[4] Such an allegation of "retaliation" was added to the plaintiff's PHRC complaint, as well as to his EEOC file in Philadelphia.

Thereafter, even though the charges had yet to be resolved, the plaintiff notified the PHRC and EEOC by letter that he was "inten[ding] to pursue th[e] matter through litigation in the state court system." See Complaint, paragraph 21.

Of interest to this Court is the averment in paragraph 22 of the complaint, wherein the plaintiff wrote that he "anticipate[d]" that the PHRC would close its file on the pending charges because of his "request" to do so. As such, averred the plaintiff, "[a]ll conditions precedent to the maintenance of th[e instant] litigation [in Common Pleas Court] have been satisfied." See Complaint, paragraph 23.

In response, the defendants filed preliminary objections raising, *inter alia,* the jurisdiction of Common Pleas Court

3. The individual selected in 1985 to fill the position of executive director for the PASR was a female less than forty years of age; the plaintiff was fifty-nine at the time. See Complaint, paragraph 14.

4. The PHRC is designated as the "deferral" agency for the EEOC. As a "deferral" agency, the PHRC has the responsibility to investigate both state and federal age and sex discrimination charges. See Complaint, paragraph 12. Also, as a procedural matter, it would appear, as indicated in the plaintiff's amended complaint with the PHRC at page 5, paragraph 6, any PHRC charge is automatically referred to the "EEOC for the purpose of dual filing." This appears on a "form" document issued by the EEOC for just such amendment(s) to original complaints.

to entertain the suit. It did so on the basis that the PHRC was the exclusive means through which the plaintiff could seek to redress his claim(s), unless within one year of filing the complaint the PHRC dismissed it or had not entered into a conciliation agreement involving the plaintiff.

Specifically, the defendants asserted that Common Pleas Court lacked jurisdiction to hear the matter since the plaintiff's amended complaint (alleging "retaliation") had been issued October 20, 1987, and neither a year had elapsed therefrom nor had the amended complaint been the subject of a conciliation agreement. Further, the defendants argued that the exclusivity of the remedies and procedures of the Pennsylvania Human Relations Act [5] (PHRA) barred the plaintiff from proceeding in Common Pleas Court. The court below agreed, and, by order dated August 29, 1988, granted the defendants' preliminary objections raising a question of jurisdiction. Accordingly, the complaint was dismissed.

With the record, as reconstructed supra, before the court below, the order of August 29, 1988, was upheld [6] and a timely appeal was filed with this Court.

■ The central issue posited for our review, which hereinbefore has yet to be addressed on its merits by a Pennsylvania appellate court, is a very straightforward one. The question (as we distill the assertions of the appellant on appeal) is one of whether the PHRC's failure to act within

5. Act of October 27, 1955, P.L. 744, § 1 *et seq.*, as amended 43 P.S. § 951 *et seq.*

6. The lower court's opinion at footnote 1 reads that the information in the plaintiff's motion for reconsideration and to supplement his request for reconsideration was neither brought to its attention nor ruled upon before the plaintiff's filing an appeal with Superior Court. Thus, the propriety of the dismissal of the appellant's motion for reconsideration and to supplement his request for reconsideration, having not been addressed by the court below, is deemed not preserved for our review. See *Humphries v. Pittsburgh & Lake Erie Railroad Co.*, 328 Pa.Super. 119, 476 A.2d 919 (1984), cert. denied, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 149 (1985).

From our review of the record, we find that the thrust of the appellant's appeal is directed toward the August 29, 1988, order of court.

the statutorily created one year time limit for dealing with complaints filed with it (*i.e.,* by either dismissal or conciliation) availed the complainant/Snyder the option to seek redress of his grievance(s) in another forum; precisely, Common Pleas Court?

Before deciding the merits of the issue posed, we need to discuss the method by which the "jurisdictional" question was resolved by the court below. On this exact point, we have had the occasion to comment upon the procedure to be followed in such a situation in *Matter of D.L.S.,* 278 Pa.Super. 446, 448, 420 A.2d 625, 626 (1980), wherein we stated:

> ... [a] court's disposition of preliminary objections is governed by Pa.R.C.P. No. 1028(c) which states: "The court shall determine promptly all preliminary objections. *If an issue of fact is raised,* the court shall take evidence by depositions or otherwise." When no issues of fact are raised, the court shall dispose of the preliminary objections as a matter of law on the basis of the pleadings alone. [The] ... preliminary objections raise an issue of law, jurisdiction, without raising any factual issues that would necessitate the reception of evidence. None of the [facts] ... alleged in the petition that are critical to the determination of jurisdiction are disputed....

(Emphasis in original; citations omitted)

Instantly, as in *Matter of D.L.S.,* the pleadings placed sufficient information before the court below for it to determine the subject matter jurisdiction issue.

Since the court below was provided with the essential facts to resolve the question of jurisdiction, and there being no dispute over these facts, the reception of further evidence was unnecessary, and the court properly disposed of the objections in a prompt manner as mandated by Pa.R. Civ.P. 1028(c).

Having dealt with the "procedural" context in which a decision on "jurisdiction" was decided by the court below, our inquiry now turns to the merits of the appellant's

assault on the Common Pleas Court's subject matter jurisdiction over the matter in dispute.

Our inquiry commences with an examination of the relevant portions of the PHRA, which here consist of subsections (b) and (c); to-wit:

(b) Except as provided in subsection (c), nothing contained in this act shall be deemed to repeal or supercede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination because of race, color, religious creed, ancestry, age, sex, national origin or handicap or disability, but as to acts declared unlawful by section five of this act the procedure herein provided shall, *when invoked,* be exclusive and the final determination therein shall exclude any other action, civil, or criminal, based on the same grievance of the complainant concerned. *If such complainant institutes any action based on such grievance without resorting to the procedure provided in this act, he may not subsequently resort to the procedure herein....*

(c) In cases involving a claim of discrimination, *if a complaint invokes the procedures set forth in this act,* that individual's right of action in the courts of the Commonwealth shall not be foreclosed. *If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.*

43 P.S. § 962(b) and (c) (Emphasis added).

All parties concerned, including the court below, rely on *Fye v. Central Transportation, Inc.,* 487 Pa. 137, 409 A.2d 2 (1979), to support their respective, albeit contrary, positions. We find the case instructive, although not dispostive,

in regard to the dual issues that have surfaced in the case at bar.

In *Fye*, because a female employee was denied her job upon returning from maternity leave, a complaint in Common Pleas Court was filed to remedy the situation. However, the complaint was dismissed on the preliminary objections of the defendant/employer, who challenged the jurisdiction of the Common Pleas Court to hear the suit given that the appellant/employee's prior filing of a complaint with the PHRC and withdrawing the same before the investigation had been completed. On appeal to the Supreme Court, the order was affirmed because of the appellant having filed her case first with the PHRC and having it closed at her request. As a result, the Supreme Court found that neither of the conditions provided by Section 962(c) of the PHRA was met, *i.e.*, the PHRC had neither dismissed the complaint nor entered into a conciliation agreement to which the complainant was a party.

Conspicuously missing from the discussion in *Fye*, which is of relevance to this Court, is the amount of time that elapsed between the filing of the complaint with the PHRC and the request of the appellant to withdraw it from further review so as to seek relief in Common Pleas court.

We believe that the time-lapse question is crucial to a disposition of the allegations appearing in the appellant's original and amended PHRC complaints. As stated supra, this subject has not been addressed, albeit in dicta, by the appellate courts of this jurisdiction. We find them to be, nevertheless, insightful as to the course to pursue here.

For example, in *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980), Westinghouse was appealing an order dismissing its preliminary objections to a class action suit brought by Lukus alleging violations of the PHRA.

In responding to Westinghouse's fourth objection on appeal, in which Lukus' entitlement to maintain her action because she never received a "right to sue notice" from the

PHRC was questioned, this Court, sitting en banc, discussed the rejection of the claim in the following fashion:

43 P.S. § 962(c) provides that "[i]f within one (1) year after the filing of a complaint ... the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant." The section then goes on to provide that "[o]n receipt of such a notice the complainant shall be liable to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act." Westinghouse argues that the phrase "[o]n receipt of such a notice" creates a jurisdictional prerequisite to Lukus's right to maintain a court action. We believe, however, that the phrase "[o]n receipt of such a notice" refers only to the PHRC's duty to give a complainant notice of what action it has taken on her complaint. The words "such a notice" refer back to the preceding sentence and incorporate by reference both the Commission's duty to give notice and the requirement that the notice state either that the complaint has been dismissed or that no conciliation agreement has been entered into. The Legislature's purpose in requiring "such a notice" was not to limit (by creating a jurisdictional prerequisite) but rather to expand the rights of a victim. Thus, "[o]n receipt of such a notice," *the victim has the unconditional right to seek redress in court whenever the PHRC has failed within a reasonable time, i.e., within a year, to achieve a result satisfactory to the victim.*

Were we to accept Westinghouse's argument, we should impose a useless procedural formality on aggrieved individuals, with the awkward consequence of requiring an aggrieved individual to file two court actions whenever the PHRC violated its duty under Section 962(c) to give the required notice: one action in mandamus, to force the PHRC to give notice; the second action against the alleged discriminator, after the notice is obtained. *Compare with Love v. Pullman Co.,* 404 U.S. 522, 92

S.Ct. 616, 30 L.Ed.2d 679 (1972), and *Watson v. Limbach Co.*, 333 F.Supp. 754 (S.D.Ohio 1971) (federal courts reject interpretation of Title VII which would require compliance with procedural technicalities that would serve no substantive purpose).[39]

---

[39] Our construction also comports with the legislative history of [S]ection 962(c). *See* 1974 Pa.Legis.J. 6397 (remarks of Rep. Hepford): "The language of this bill [enacting Section 962(c)] clearly spells out that unless the commission dismisses the complaint or has not entered into an agreement with the complainant within 180 days [this period was subsequently changed to one year], the complainant can then proceed anew in the court of common pleas."

276 Pa.Super. at 274–276 & n. 39, 419 A.2d at 453–454 & n. 39 (Emphasis added). The Court also discussed Lukus' justification for not needing to continue to utilize the expertise of the PHRC given that another employee (a Ms. Eberts) had filed a similar class action against Westinghouse and the PHRC complaint was pending then for more than seven years without an administrative resolution.

Because Lukus might be considered a member of the class represented by Ms. Eberts, we considered it to be a pointless and inadequate requirement to necessitate Lukus' maintenance of *her* own complaint with the PHRC as a condition to suing in Common Pleas Court.

Most recently, our Supreme Court quoted with approval the *Lukus* decision in holding that the PHRC is the initial forum for resolution of discrimination claims in the workplace. See *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989), wherein the plaintiffs' failure to proceed to the PHRC to have their claim of wrongful discharge (based on sex discrimination) heard hindered their ability to pursue a judicial remedy.

In the process of reaching this conclusion, the *Clay* Court made note of Section 962(c)'s exception to the rule of exclusivity. It did so in the following fashion:

It is provided in section 962(c) of the PHRA that the rights of a complainant thereunder shall not be foreclosed from being pursued in the courts, if, within one year after the filing of a complaint, the PHRC dismisses the com-

plaint or fails to enter a conciliation agreement to which the complainant is a party. 43 P.S. § 962(c). The purpose for providing final, rather than initial, resort to the courts was described in *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 232, 276, 419 A.2d 431, 455 (1980) (citation omitted):

> The legislative history of section 962(c) shows that the Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRC for a period of one year in order to conduct an investigation of the charges and, if possible, conciliate the matter. 1974 Pa.Legis.J. 6396–98. The reasons the Legislature chose thus to postpone a complainant's right to seek redress by action in court are clear. The PHRC possesses a "particular expertise" in the area of unlawful discrimination not possessed by the courts by requiring a complainant first to repair to the PHRC's expertise, thereby minimizing the inefficient use of judicial resources (and its attendant expense and embarrassment of the parties). In other words, the rationale of the principle of exhaustion of administrative remedies applicable to other areas of administrative law, is also applicable to actions brought under section 962(c) of the PHRC.
>
>   *   *   *   *   *   *
>
> Parties initially electing the administrative route [a]re, of course, viewed as being restrained from judicial recourse for a period of one year in accordance with subsection (c). . . .

522 Pa. at 92 & 95, 559 A.2d at 920 & 921. Even Chief Justice Nix, in his Concurring Opinion, remarked on the time-constraints of the PHRA by writing that, "if the administrative remedy is chosen, civil action is precluded for a period of one year during which the Commission has exclusive jurisdiction. 43 Pa.C.S. § 962(c)." Id., 522 Pa. at 98, 559 A.2d at 923 (Concurring Opinion of Chief Justice Nix)

We garner from the *Clay* and *Lukus* decisions support for the proposition that where a complainant has not had

his/her grievance resolved by the PHRC within one year of the filing of the same, then the PHRA authorized the grievant to pursue another avenue of recourse; more particularly, the judicial system and this is so even though no "notice" of discontinuance/dismissal is forwarded to the complainant by the PHRC. See *Davis v. United States Steel Supply, Inc.*, 581 F.2d 335, 338 (3rd Cir.1978); *Espenshade v. Pennsylvania State University*, 556 F.Supp. 131, 133 (M.D.Pa.1983); *Webster v. Great American Insurance Co.*, 544 F.Supp. 609, 610 (E.D.Pa.1982); *Lyon v. Temple University of the Com. System of Higher Education*, 543 F.Supp. 1372, 1377 (E.D.Pa.1982); *Beamon v. W.B. Saunders*, 413 F.Supp. 1167, 1175 (E.D.Pa.1976); *Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 506–507, 536 A.2d 1375, 1380 (1988) (en banc), rev'd on other grounds, 522 Pa. 86, 559 A.2d 917 (1989); *Householder v. Kensington Mfg. Co.*, 360 Pa.Super. 290, 293, 520 A.2d 461, 463 (1987), cited with approval in 522 Pa. 86, 559 A.2d 917 (1989); *Baker v. Com. of Pa., Pa. Human Relations Comm'n*, 75 Pa.Cmwlth. 296, 305, 462 A.2d 881, 886 (1983), aff'd and modified, 507 Pa. 325, 489 A.2d 1354 (1985); *Young v. Y & S Candies*, 45 Pa.D. & C.3d 115, 119 (Lancaster Cty.1987); *Emenheiser v. Colonial Manor Nursing Home*, 39 Pa.D. & C.3d 364, 366–367 (York Cty. 1985); see also *Aquino v. Sommer Maid Creamery, Inc.*, 657 F.Supp. 208, 211 (E.D.Pa.1987).

For us to hold otherwise would not be consistent with our interpretation of the law on the subject, and, in passing, we would note that it is not uncommon for the cases before the PHRC to be protracted. See *e.g., Baker v. Com. of Pa., Pa. Human Relations Comm'n*, 507 Pa. 325, 489 A.2d 1354 (1985) (Three and one-half years of investigation by PHRC before dismissing complaint on a finding of no probable cause); *Beaver Cemetery v. Com. of Pa., Pa. Human Relations Comm'n*, 107 Pa.Cmwlth. 190, 528 A.2d 282 (1987) (Eight years elapsed between the filing of complaint and conducting of a hearing); *Com. of Pa., Dept. of Trans. v. Com. of Pa., Pa. Human Relations Comm'n*, 84 Pa.

Cmwlth. 98, 480 A.2d 342 (1984) (Three-year delay between the time complaint was filed and the commencement of the first hearing before PHRC).

We in no way wish to point the accusatory finger at the PHRC as being dilatory, for this Court knows quite well how an inundation of case filings can strain the dispute-resolution process. Even so, for whatever reason(s) the plaintiff's case stalled through the investigative machinery of the PHRC, the fact remains that the lapse of more than one year occurred since the filing of the (first) February, 1986 complaint. This afforded, as far as this Court is concerned, the plaintiff with the right to remove the case to another venue for resolution. See *Lukus,* supra.

Thus, as for the "age and sex" discrimination complaint presented to the PHRC in February of 1986, the plaintiff did not violate the exclusivity provision at Section 962(c) of the PHRA, having waited the required time (one year) before removing it from the jurisdiction of the PHRC. The absence of "notice" from the PHRC of a dismissal of the case is not fatal. See *Lukus,* supra. The same result does not obtain, however, with regard to the second charge of discrimination filed by the plaintiff.

The plaintiff's initial complaint (of February 3, 1986) was docketed by the PHRC at No. E–35807–D and was grounded on "age and sex" discrimination. On October 20, 1987, the plaintiff sought to "amend" his initial charge by an additional allegation concerning subsequent "retaliation" on the part of PASR (by not hiring him with the removal of the previously hired executive director) for his having sought relief by way of the PHRA.

The PHRC elected to entertain the "retaliation" allegation at docket No. E–42113–D, *i.e.,* separate and distinct from the plaintiff's earlier complaint. This fact is borne out by the language appearing at point 9 of the "amended" complaint filed by the plaintiff's attorney and signed by Snyder indicating that it was on counsel's "recommendation" that the PHRC "initiate another complaint based on

retaliation". Additionally, when the plaintiff sought to withdraw each case from the PHRC, it responded in letter form, two in number and of even date, acknowledging receipt of the plaintiff's request and its approval as to each separate case file then before the PHRC being withdrawn from its consideration. This did occur, and, therefore, with its withdrawal (No. E–421110–D) at the plaintiff's request, which transpired well before the expiration of the one year time-limit set forth in Section 962(c), we find the teaching of *Fye,* supra, dictates that the court below is without jurisdiction to deal with that portion of the plaintiff's civil complaint involving the "retaliation" allegation.

Moreover, because proceedings before the PHRC are strictly governed by the statute devised by the Legislature, this renders them wholly distinct from proceedings pursuant to the Rules of Civil Procedure, and decisions thereunder are not dispositive of proceedings before the PHRC. See *Murphy v. Com.,* 506 Pa. 549, 557, 486 A.2d 388, 392 (1985). This autonomy by the PHRC is reflected in 43 P.S. § 959(g), wherein it is written in relevant part that:

> The Commission shall establish rules or practices to govern, expedite and effectuate the foregoing procedure [with regard to complaints filed] and its own actions thereunder.

As amended, December 16, 1986, P.L. 1626, No. 186, § 10 (Supp.1989–1990).

It is equally clear that the power of the PHRC results from the Legislature's delegation of such power. As such the limits of that power must be strictly construed. *Murphy v. Com.,* supra. Since the initial 1986 complaint dealt with allegations of "age and sex" discrimination, the second complaint of 1987, labelled "amended" by the plaintiff, was treated by the PHRC as a new charge against the appellee concerning "retaliation" for allegedly the appellant's submission of charges with the PHRC and the EEOC. This is consistent with the time-frame within which a charge of discrimination must be filed with the PHRC, *i.e.,* no later

than one hundred and eighty days after the alleged violation occurred. See 43 P.S. § 959(g) (Supp.1989–1990).

At bar, we had the passage of almost nineteen months between the two alleged discriminatory acts attributed to the appellee. Thus, under Section 959(g), assigning a separate case number to the "retaliation" charge was permitted by the PHRA.

Accordingly, because the plaintiff's "age and sex" discrimination complaint had been before the PHRC for longer than one year, we hold it was removable by the plaintiff to Common Pleas Court without violating subsections (b) and (c) of Section 962 of the PHRA. As for the "amended" complaint of October, 1987, it being rooted in a "retaliation" charge, and having been before the PHRC for less than one year, it could not be withdrawn and made a part of the plaintiff's civil cause-of-action-complaint without running afoul of our interpretation of *Clay,* supra, *Fye,* supra, and *Lukus,* supra. More importantly, the PHRC, having been created by the Legislature for the specific purpose of developing a body of law to deal with the elusive and often complex body of discrimination law, *i.e.,* wanting the PHRC to become the expert in the field so as to expeditiously resolve complaints and free the courts from such litigation, we are not in a position to question its administrative rationale for choosing to assign two different docket numbers to each of the plaintiff's discrimination allegations.[7] See *Murphy v. Com.,* supra.

7. The Legislature's broad-based delegation of authority to the PHRC is evident from Section 957, which provides in pertinent part:

The Commission shall have the following powers:

(d) To adopt, promulgate, amend and rescind rules and regulations to effectuate the policies and provisions of this act.

(e) To formulate policies to effectuate the purposes of this act....

43 P.S. § 957. Further, at 43 P.S. § 959(e), (g) (Supp.1989–1990), the PHRA reads:

(e) ... The Commission or the complainant shall have the power reasonably and fairly to amend any complaint....

(g) The Commission shall establish rules or practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder. * * * Any complaint filed pursuant to this section

As a result, the plaintiff's complaint, as it applies to his allegations of "age and sex" discrimination, may continue through the judicial process; whereas the "retaliation" claim, having been prematurely removed from the scope of PHRC scrutiny, cannot be transferred to the civil arena to be heard as a part of the plaintiff's complaint there.

Therefore, the order of the court below granting the defendants' preliminary objections as to the "age and sex" discrimination charge is reversed. However, we affirm that portion of the same order that would preclude the plaintiff from having his "retaliation" allegation heard in Common Pleas Court.

Order reversed in part and affirmed in part. Jurisdiction is relinquished.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

The trial court sustained the defendant's preliminary objections questioning jurisdiction due to plaintiff's claim before the Pennsylvania Human Relations Commission (PHRC). It found that where the plaintiff had sought relief under the Pennsylvania Human Relations Act (the Act) and thereafter sought to unilaterally close the file with the PHRC, the plaintiff's failure to exhaust the administrative remedy precluded an action proceeding within the common pleas court. I agree and, therefore, dissent.

In *Fye v. Central Transportation, Inc.*, 487 Pa. 137, 409 A.2d 2 (1979), our Supreme Court found that a claimant's initial election to seek redress under the Act divested jurisdiction of an equity court of common pleas to entertain the complaint subsequently filed in that court. In examining and rejecting the claimant's act of terminating the action before the PHRC, the *Fye* court expressly considered the 1974 amendments to section 12 of the Act. Section 12(c) provided two exceptions to the exclusivity provisions of

must be so filed within one hundred eighty days after the alleged act of discrimination.

section 12(b), namely (1) dismissal of the complaint *by the Commission,* or (2) failure *by the Commission* to enter into a conciliation agreement to which the complainant is a party. Our Supreme Court concluded that the closing of the PHRC file at the claimant's request fit neither of the two exceptions, that the perimeters of the terms of the section 12(c) exceptions were expressly unambiguous, and the chancellor's decree dismissing the state court complaint upon preliminary objections should be, and was, affirmed. *Id.* at 141, 409 A.2d at 4–5.

Most recently, our supreme court has re-affirmed its holding in *Fye v. Central Transportation, Inc.,* while declaring that the rationale of the principle of exhaustion of administrative remedies is applicable to actions brought under section 12(c), 43 P.S. § 962(c). *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989).

The majority would hold that where a PHRC complaint has not been resolved by the Commission within one year, then the Act authorizes the grievant—without more—to proceed in the common pleas court, even though the matter remains pending before the Commission. On the facts of this case, I would proceed more cautiously. It is not unreasonable to require that one seeking to move away from an exclusive statutory remedy be required to allege a good faith attempt at exhausting that remedy prior to invocation of the ultimate resort of the courts. *Clay v. Advanced Computer Applications, supra; Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 276–277, 419 A.2d 431, 455 (1980).

Snyder has the burden of convincing this court that he is entitled to pursue his claims before the court of common pleas. Snyder's entire pleading with regard to the pendency of his claims before the PHRC is as follows:

12. Thereafter, on or about February 3, 1986, Plaintiff filed a complaint alleging age and sex discrimination (E–35807–D—031862255) with the Pennsylvania Human Relations Commission (PHRC), which state agency is designated as the "deferral" agency for the federal Equal

Employment Opportunity Commission (EEOC). As a "deferral" agency, the PHRC has responsibility for investigating both State and Federal age and sex discrimination charges.

. . . .

19. a) Plaintiff's initial charge of discrimination was docketed by the PHRC at E–35807–D—031862255.

b) Subsequently, Plaintiff sought to amend that charge to add the retaliation conduct alleged in this complaint to the charge, the PHRC elected to entertain that retaliation and continuing violation allegation at docket no. E–42113–D.

20. Both of the aforementioned charges of age and sex discrimination, on the part of PASR, were timely and dually filed with the EEOC, Philadelphia Regional Office and its designated state agency, the PHRC.

21. By letter, Plaintiff has advised the PHRC, the U.S. Department of Labor and the EEOC of his *intention to pursue this matter through litigation in the state court system.*

22. Plaintiff *anticipates* and therefore avers that the PHRC *will close* its pending charge procedures and charges in this matter based upon Plaintiff's request and indication that this matter will be proceeding to litigation on the State and pendent Federal claims involving Plaintiff and Defendants which allege unlawful age and sex discrimination in employment.

23. *All conditions precedent to the maintenance of this litigation have been satisfied.*

Plaintiff's complaint at pp. 4, 6–7. [Emphasis added].

Snyder has pled only that he advised the PHRC of his intent to file charges in the court of common pleas and that he anticipated the closing of his PHRC charges "based upon [his] request and indication that this matter will be proceeding to litigation on the State and pendent Federal claims." It is unclear what is meant by the word "request" in this context. We do know, however, that Snyder did not make a

formal request for the withdrawal of his PHRC charges until after filing his complaint and therefore, his pleading could not refer to a past request that his charges be dropped. On the basis of these pleadings, the majority would permit the complainant to pursue his claims in the court of common pleas.

Clearly, Snyder had not, as of the time that his complaint was filed, been given notice by the PHRC. His complaint contains no averment that he requested any such notice. While I would agree that it is unnecessary to require an aggrieved party to initiate an action in mandamus to compel the issuance of a right-to-sue letter, I am unwilling to afford a complainant who has already invoked the jurisdiction of the PHRC access to the court of common pleas merely upon the averment that the complainant "advised the PHRC" of his "intention to pursue" state court remedies. I should think it not too heavy a burden for the party seeking access to the state courts to show either compliance with the exclusivity provisions of section 12(c) of the Act or some valid reason why compliance (notice) should be excused in any particular case: such as the PHRC's failure or refusal to issue, upon a valid request, notice that the claims have either been dismissed or have not been the subject of a conciliation agreement. Here, Snyder has failed to do either.

In this case, the trial court's function was to determine whether the law will bar recovery due to a lack of subject matter jurisdiction. Pa.R.C.P. No. 1017(b)(1). *In re Ordinance No. 1–9–86, Logan Township,* 116 Pa.Cmwlth. 640, 542 A.2d 1051 (1988). The only pleadings properly before the trial court during consideration of the objections were the Complaint and the Preliminary Objections. The Notice of Appeal was filed September 27, 1988. Although Snyder filed a Motion and Brief in support of a request for reconsideration, the order sustaining the preliminary objection raising a question of jurisdiction also dismissed the complaint. That order was final and appealable.

Snyder did not seek to amend his complaint within ten days of service of the preliminary objections, although permitted to do so. Pa.R.C.P. No. 1028(c). He has attempted to place additional facts before this court on appeal, facts which were not of record at the time the preliminary objections were decided by the trial court. This is improper. When an appeal is from the sustaining of preliminary objections in the nature of a demurrer, the well-pleaded facts of the complaint are admitted, as well as any reasonable inferences that can be drawn from them. *LaZar v. RUR Industries, Inc.*, 337 Pa.Super. 445, 448, 487 A.2d 29, 31 (1985). Here, the propriety of the order sustaining preliminary objections cannot be reviewed on a set of facts different from those submitted to the trial court in the complaint.

I agree with the majority that the complaint and preliminary objections thereto placed sufficient information before the trial court for it to determine the jurisdictional issue. Those operative facts are: (1) Snyder, on February 3, 1986, filed a sex and age discrimination complaint with the PHRC; (2) Snyder sought to amend his complaint to add retaliation conduct; (3) the PHRC assigned a separate docket number to the claim of retaliation and continuing violation; (4) Snyder wrote to the PHRC to tell the Commission of his intention to pursue his claim(s) in the state court system; and (5) at the time the state court complaint was filed, the PHRC had taken no action to dismiss the complaint or enter into a conciliation agreement.

The only issue before us is whether, upon these facts, the law will not permit recovery by Snyder, resolving any doubt in favor of a refusal to sustain the objections. Preliminary objections should be sustained only in cases which are clear and free from doubt. *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973), *In re Estate of Thompson*, 332 Pa.Super. 360, 361, 481 A.2d 655, 656 (1984). When we limit our consideration to the facts contained within the complaint, there are no equitable considerations to support a modification of the exclusivity provisions of the

Act.  Snyder neither averred compliance with 43 P.S. § 962(c) nor alleged any facts suggesting that compliance with § 962(c) should be waived or modified.  There may be other circumstances where the exhaustion of administrative remedies might be foregone, but the facts here presented are not that case.

As Mr. Justice Flaherty points out in *Clay v. Advanced Computer Applications*, 522 Pa. at 95, 559 A.2d at 921, the intended forum for addressing grievances of the sort presented here is the PHRC.  Where the proper methods for addressing those grievances have not been exercised, judicial recourse is foreclosed.  *Id.*

For these reasons, I would affirm the order of the trial court which sustained the preliminary objections.  I must, therefore, respectfully dissent.