

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2001

# Burgh v. Borough Council of Montrose

Precedential or Non-Precedential:

Docket 99-4032

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Burgh v. Borough Council of Montrose" (2001). *2001 Decisions.* Paper 116.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 25, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-4032

TIMOTHY M. BURGH

v.

BOROUGH COUNCIL OF THE
BOROUGH OF MONTROSE

       TIMOTHY BURGH,

       Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 99-cv-00315)
District Judge: Honorable Richard P. Conaboy

Argued November 6, 2000

Before: ROTH, RENDELL and STAPLETON, Circuit Judges

(Opinion filed May 25, 2001)

       David S. Dessen, Esquire (Argued)
       Dessen, Moses & Sheinoff
       1814 Chestnut Street
       Philadelphia, PA 19103

        Attorney for Appellant

       Patrick J. Murphy, Esquire (Argued)
       Murphy, Piazza & Genello
       538 Spruce Street
       Scranton Life Building, Suite 300
       Scranton, PA 18503

        Attorneys for Appellee

OPINION OF THE COURT

ROTH, Circuit Judge:

Plaintiff Timothy M. Burgh, an African-American male, applied for a job as a part-time police officer with the Borough of Montrose (Pennsylvania) Police Department. He was not hired for the position, which was filled by a white male with no prior on-the-job police experience. Bur gh brought suit against the Borough under T itle VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000e, et seq., and under the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S. S 951, et seq., alleging that the Bor ough did not hire him because of his race. The District Court granted summary judgment in favor of the Borough and against Burgh on both counts, finding that the claims had beenfiled beyond the applicable statutory limitations periods. For the reasons that follow, we will reverse the grant of summary judgment and remand both claims to the District Court for further proceedings consistent with this opinion.

I. FACTS

The facts underlying the instant dispute have not been developed in detail, given the early stage at which the matter was resolved in the District Court. Bur gh's complaint is the only pleading in the recor d and no discovery has been taken.

According to the complaint, in April 1993, Bur gh applied for a position as a part-time police officer with the Borough's police department. He updated this job application sometime before June 1994. In April 1994, Burgh accepted a position as a part-time police officer in the Clifford Township (Pennsylvania) Police Department. Clifford Township is located appr oximately 25 miles from Burgh's home in South Montrose.

In June 1994, the Montrose Police Department hired a white male, allegedly with no prior on-the-job police experience, as a part-time police officer,filling the position that Burgh had sought. The Montrose Police Department

did not interview Burgh for this, or any other , position. Burgh alleges that he was more qualified than the person hired and that the department failed to hir e him because of his race.

On December 8, 1994, Burgh filed a char ge of racial discrimination against the Borough with the Pennsylvania Human Relations Commission (PHRC) under the PHRA, 43 Pa. C.S. S 955(a).1 The PHRA claim was filed within 180 days of the alleged unlawful employment practice, the Borough's failure to hire Bur gh because of his race. The state administrative complaint was therefor e timely. See 43 Pa. C.S. S 959(h).

Burgh requested that his complaint be r eferred to the United States Equal Employment Opportunity Commission (EEOC) for dual filing as a Title VII char ge. The federal claim was accepted and docketed by the EEOC on Mar ch 20, 1995. This claim was filed within 300 days of the alleged discriminatory employment practice and it too was timely. See 42 U.S.C. S 2000e-5(e)(1). On May 20, 1995, the EEOC sent Burgh a letter advising him of thefiling of his Title VII claim. The letter stated that the EEOC would investigate and resolve the charge and that the Commission must issue a Notice of Right Sue before Bur gh could file a court action under Title VII.

On March 18, 1996, the PHRC sent Burgh a letter advising him that it had been one year since hefiled his complaint with the PHRC and notifying him that he now had the right to bring a private civil action under the PHRA in the Court of Common Pleas. The letter stated that Burgh was not required to file such a private action and that the Commission was continuing to process his case and would make every effort to resolve it as soon as possible. If, however, Burgh did wish to file in state court, the Commission would dismiss the administrative complaint and would not decide the case. The letter further advised Burgh to ensure that any complaint was pr operly filed, particularly that it was timely filed, and to consult an

_____

1. The administrative complaint was not time-stamped and docketed with the PHRC until December 24, 1994. However , the parties have stipulated to the December 8 filing date.

attorney about representing him in court. There is no dispute that Burgh received this letter . Burgh never filed an action in the Court of Common Pleas. The PHRC appar ently took no further action on the administrative char ge.

Sometime prior to October 1998, Burgh r etained counsel. On October 19, 1998, Burgh's attorney sent a letter to the EEOC, requesting that the agency issue a right-to-sue letter in "light of the Pennsylvania Commission's extended delay in resolving this matter." The EEOC on December 1, 1998, sent a letter to Burgh's attorney, advising Burgh of his right to institute a civil action under Title VII within 90 days of receipt of that letter. Burghfiled his lawsuit, alleging violations of Title VII and the PHRA, in the United States District Court for the Middle District of Pennsylvania. His suit was filed on February 26, 1999, 87 days after the right-to-sue letter was issued.

On May 28, 1999, Burgh moved for default judgment; this motion was withdrawn by stipulation, dated June 21, 1999. On June 28, 1999, the Borough filed a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), contending that, because Bur gh had brought suit beyond the applicable statutes of limitations, his discrimination claims were untimely.

The District Court notified both parties during a case management conference that the motion would be treated as one for summary judgment; both parties agr eed to rest on their memoranda and neither requested the opportunity to file additional evidence. On November 16, 1999, the District Court granted summary judgment in favor of defendants.

The District Court held first that Burgh could not rely on the fact that he had not received a right-to-sue letter from the EEOC prior to December 1998 as reason for the delay in filing his action because to "accept Plaintiff's argument we would have to decide we could wait forever to file suit even when the commission takes no action and fails to notify the Plaintiff. This flies in the face of the basic reason for a statute of limitations." The court then determined that the issuance of a right-to-sue letter was not a necessary prerequisite to the commencement of a civil action. In

4

reaching this conclusion, the court relied on case law holding that the PHRC's failure to issue a notice of right to sue after one year does not bar a civil action under the state statute. See Rogers v. Mount Union Bor ough by Zook, 816 F. Supp. 308, 316 (M.D. Pa. 1993) (citing Snyder v. Pennsylvania Ass'n of Sch. Retirees, 566 A.2d 1235 (Pa. Super. Ct. 1989)). The court concluded that each agency should have responded to Burgh's administrative complaints within one year of filing with that agency--the PHRC by December 8, 1995; the EEOC by March 20, 1996. The court reasoned that after the passage of one year, Burgh could have brought a private civil action on the federal and state claims. As a result, the statute of limitations for each claim began to run on the one year anniversary of its filing with the agency.

The District Court went on to determine the period after the one-year anniversary within which a complainant could bring suit. Because the court found no specific limitations period in Title VII, it decided to borr ow a state statute of limitations governing an analogous cause of action. The court held that Pennsylvania's two-year limitations period for personal injury actions, which has been applied to federal civil rights actions brought under 42 U.S.C. S 1983, should govern Title VII. The court found a rationale for this conclusion in the fact that both statutes pr ovide redress for employment discrimination. Working fr om March 20, 1996, the one-year anniversary of the referral of the complaint to the EEOC, the court held that Burgh had until March 20, 1998, to file suit.2 Because he did not file until February

_____

2. It is worth noting that, even assuming ar guendo that the District Court's approach to the limitations issue was correct as a matter of law, its application of the limitations period to this case was incorrect. Under federal law, the EEOC has 180 days to process a claim and notify the complainant of the result; the complainant may request a right-to-sue letter after that 180 days. 42 U.S.C. S 2000e-5(f)(1); 29 C.F.R. S 1601.28(a). There is no provision in the statute that supports the application of a one-year period from the filing of the EEOC charge as a limit for the filing of a court action. Ther efore, even if a two-year limitations period were to be grafted onto T itle VII, the two-year period should have begun to run on September 16, 1995, 180 days from the March 20 EEOC filing. It would then have lapsed on September 16, 1997, even earlier than the District Court deter mined.

5

1999, his suit was 11 months late and therefor e time-
barred.

The District Court did note that the inaction of the PHRC
and EEOC was partially to blame for the delays. However,
the court held that the filing of the action almost five years
after the filing of the first administrative complaint was
"clearly unreasonable" and therefor e untimely. This timely
appeal followed.

II. JURISDICTION AND STANDARD OF REVIEW

The District Court had original federal question
jurisdiction over the Title VII claim, pursuant to 42 U.S.C.
S 2000e-5(f)(3) and 28 U.S.C. S 1331, and supplemental
jurisdiction over the PHRA claim, pursuant to 28 U.S.C.
S 1367(a). We have appellate jurisdiction over the final
decision of the District Court, pursuant to 28 U.S.C.
S 1291.

The District Court granted summary judgment, which is
subject to plenary review, applying the same legal standard
used by the District Court. See Pacitti v. Macy's, 193 F.3d
766, 772 (3d Cir. 1999); Ideal Dairy Far ms, Inc. v. John
LaBatt, Inc., 90 F.3d 838, 841 (3d Cir . 1996). Further, the
issue of the proper limitations period under T itle VII is
primarily a legal one, involving the interpr etation of federal
law, and our review is plenary. See Lavia v. Pennsylvania
Dep't of Corrs., 224 F.3d 190, 194-95 (3d Cir. 2000).
Summary judgment is appropriate when ther e are no
genuine issues of material fact and the moving party is
entitled to judgment as a matter of law. See Fed. R. Civ. P
56(c); DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000) (en
banc).

III. DISCUSSION

Both Title VII and the PHRA make it unlawful to fail or
refuse to hire or employ an individual because of that
individual's race or color. See 42 U.S.C. S 2000e-2(a)(1); 43
Pa. C.S. S 955(a). The analysis of the claims is identical.
See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313,
317 n.3 (3d Cir. 2000) (citing Jones v. School Dist. of

6

Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999)). Both statutes also establish administrative remedies and procedures that claimants must exhaust prior to bringing a civil action in court. See 42 U.S.C. S 2000e-5, 43 Pa. C.S. S 962(c); see also Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) (holding, in Title VII case, that plaintiff must exhaust administrative remedies prior to bringing suit in court); Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 921 (Pa. 1989) (holding that the intended forum for initially addressing PHRA claims is the PHRC); Bailey v. Storlazzi, 729 A.2d 1206, 1214 (Pa. Super . Ct. 1999) (holding that plaintiff must exhaust administrative remedies under PHRA prior to bringing case to court). The statutes have slightly different r equirements in terms of timing and scope of the administrative remedy. Because this case turns on the precise requirements of each statute, an overview of the statutory provisions is helpful.

A. TITLE VII

Under Title VII, a charge of race discrimination in employment must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. The EEOC must serve notice of the char ge on the employer within ten days of the filing of the char ge. See 42 U.S.C. S 2000e-5(e)(1); see also Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 359 (1977). If the complainant also initiates a complaint with a parallel state agency, as occurred in the instant case, the period forfiling the charge with the EEOC is extended to 300 days from the date of the alleged unlawful employment practice. See 42 U.S.C. S 2000e-5(e)(1).

The EEOC is then required to investigate the charge, see Occidental Life, 432 U.S. at 359, and the complainant must allow a minimum of 180 days for the EEOC investigation to proceed. See 42 U.S.C. S 2000e-5(f)(1); see also Occidental Life, 432 U.S. at 361 (holding that a private right of action does not arise until 180 days after a charge has been filed). The congressional policy underlying this framework was to resolve discrimination claims administratively through cooperation and voluntary compliance in an infor mal, noncoercive manner. See Occidental Life, 432 U.S. at 363;

7

Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 1999).

If, after 180 days, the EEOC has not resolved the charge, it must notify the complainant, see 42 U.S.C. S 2000e-5(f)(1), generally through the issuance of a"right-to-sue" letter, in which the EEOC states that it sees no reason to take action on the complaint. See Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). After 180 days, the complainant on his own may also request a right-to-sue letter. The EEOC must issue the letter pr omptly on request. See 29 C.F.R. S 1601.28(a)(1). The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII. See Anjelino, 200 F.3d at 93 (citing Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)) ("The preliminary step of the filing of the EEOC charge and the receipt of the right to sue notification are `essential parts of the statutory plan."'). A complainant may not bring a Title VII suit without havingfirst received a right-to-sue letter. See Anjelino, 200 F.3d at 87; Robinson, 107 F.3d at 1020. Nothing in the statute or the regulations, however, requires a complainant to request a right-to-sue letter or to bring a private suit. Nevertheless, if the complainant does choose to bring a private action, it must be filed within 90 days of the date on which the complainant has notice of the EEOC's decision not to pursue the administrative charge. See 42 U.S.C. S 2000e-5(f)(1). The on-set of the 90-day period is generally considered to be the date on which the complainant receives the right-to-sue letter. See Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999); Mosel v. Hills Dept. Store, Inc. v., 789 F.2d 251, 52 (3d Cir. 1986) (per curiam).

Both the 180-day period for filing the administrative complaint3 and the 90-day period for filing the court action are treated as statutes of limitations. See Zipes v. Trans World Airways, Inc., 455 U.S. 385, 393 (1982) (likening requirement of timely filing of administrative charge to statute of limitations); Figueroa v. Buccaneer Hotel Inc., 188

_____

3. Or the 300-day period if there is a parallel state filing.

F.3d 172, 176 (3d Cir. 1999) (same with respect to time for bringing court action after receipt of right-to-sue letter). We have strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed. See Figueroa, 188 F .3d at 176. In our review of this case, we must keep in mind, however, that the statute of limitations does not begin to run unless and until there is "final agency action," such as the issuance of a right-to-sue letter. See Waiters, 729 F .2d at 237. Without that final agency action, the complainant has not exhausted his administrative remedies and cannot bring suit. See Anjelino, 200 F.3d at 87.

B. THE PHRA

The PHRA similarly requires that claims be brought first to an administrative agency, the PHRC, which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter. See Clay, 559 A.2d at 920 (quoting Lukus v. W estinghouse Elec. Corp., 419 A.2d 431, 455 (Pa. Super. Ct. 1980)). A complainant may not file an action in court for a period of one year. See Clay, 559 A.2d at 921; 43 Pa. C.S. S 962(c)(1). If the PHRC does not resolve the administrative charge within one year, the commission must notify the complainant that he may bring an action in the Court of Common Pleas. See 43 Pa. C.S. S 962(c)(1); see also Snyder, 566 A.2d at 1240 (holding that where a complainant has not had her grievance resolved by the PHRC within one year of filing, she could pursue another course, namely, an action in the judicial system). Importantly, and unlike under Title VII, notice of the right to sue is not required in order to bring the PHRA action. Instead, after one year has elapsed, a complainant may bring a court action r egardless of whether or not he has received a letter fr om the PHRC. See Snyder, 566 A.2d at 1240. No case law suggests, however, that a complainant must bring the civil action then or at any later time.

Moreover, the PHRA does not limit the time, after receipt of the one-year notice, within which a civil action must be brought. The statute does provide that any civil action must

9

be filed within two years after notice from the PHRC that it is closing the complaint. See 43 Pa. C.S.S 962(c)(2).4 The PHRC one-year notice is not, however, the equivalent of notice that the PHRC is closing the complaint. A r eview of the notice sent to Burgh illustrates this point. The letter states that Burgh was not required to file suit in court, that the Commission was continuing to process the case and would make every effort to resolve it as soon as possible, and that only if Burgh filed a complaint in state court would the PHRC dismiss the complaint.

C. IS THERE A GAP IN THE TITLE VII LIMITA TIONS
      PERIODS

The District Court granted summary judgment on Burgh's Title VII claim, applying the Pennsylvania two-year statute of limitations to Title VII as a gap-filler and running the limitations period from the date on which Burgh could have requested a right-to-sue letter fr om the EEOC. Under this application of limitations, the court found Bur gh's claim to be untimely.

It is well-established that, if Congress has cr eated a cause of action and not specified the period of time within which a claim must be asserted, a court may infer that Congress intended state limitations periods to apply and may borrow such periods and engraft them onto the federal statute. See Occidental Life, 432 U.S. at 367; see also id. (citing, inter alia, Runyon v. McCrary , 427 U.S. 160, 179-82 (1976) (state limitations period applies to Civil Rights Act of 1866, 42 U.S.C. S 1981) and O'Sullivan v. Felix, 233 U.S. 318 (1911) (same as to Civil Rights Act of 1871, 42 U.S.C. S 1983)). We have borrowed two-year personal injury

_____

4. This provision was added to the PHRA in 1991. Some courts had held prior to the amendment that Pennsylvania's two-year statute of limitations for personal injury, 42 Pa. C.S. S 5524(7), applied to PHRA claims. See Raleigh v. Westinghouse Elec. Corp., 550 A.2d 1013, 1014 (Pa. Super. Ct. 1988); see also Long v. Board of Educ. of City of Philadelphia, 812 F. Supp. 525, 534 (E.D. Pa.) (relying on Raleigh in dismissing as time-barred PHRA claims that wer e not brought within two years of the plaintiff's receipt of notice of her right to sue), aff'd 8 F.3d
811 (3d Cir. 1993) (mem.).

10

limitations periods from the states and imposed them in both S 1981 claims, see Zubi v. AT&T Corp., 219 F.3d 220, 222 (3d Cir. 2000), and S 1983 claims. See Nelson v. County of Allegheny, 60 F.3d 1010, 1012 (3d Cir . 1995). Where, however, Congress explicitly provides a limitations period in the text of the statute, that period is definitive. There is no need to borrow a state period. See Holmber g v. Armbrecht, 327 U.S. 392, 395 (1946).

Contrary to the Borough's arguments, T itle VII is not a statute without a limitations period. Congress did provide a statutory limitations period for employment discrimination claims; in fact, Congress provided two periods. First, a complainant has 180 days from the occurr ence of the alleged unlawful employment practice within which to bring a discrimination charge before the EEOC, see 42 U.S.C. S 2000e-5(e)(1), or 300 days where ther e has been cross-filing with a state agency under state law. See 42 U.S.C. S 2000e-5(e)(1). Second, a complainant has 90 days from receipt of the right-to-sue letter to bring an action in court. See 42 U.S.C. S 2000e-5(f)(1); see also Seitzinger, 165 F.3d at 239; Mosel, 789 F.2d at 252. Both periods have been treated as statutes of limitations. See Zipes, 455 U.S. at 393; Figueroa, 188 F.3d at 176. The latter limit is strictly enforced and a delay of even one day will bar a claim. See Figueroa, 188 F.3d at 176.

These two periods together represent the congressional determination of the relevant and pr oper time limitations under Title VII. The imposition of an additional limitations period is inconsistent, and indeed in direct conflict, with the plain language of the federal statute. Ther e is no gap to fill and thus no need to import a state limitations period as a gap-filler. The statute by its ter ms establishes the two appropriate time requirements that a complainant must satisfy in order to bring a timely claim.

Furthermore, the two-year limitations period urged by the Borough would conflict with the timetables established in Title VII. See Occidental Life, 432 U.S. at 368-69 & n.23. For example, in the most basic case, if a complainant requests and receives a right-to-sue letter exactly 180 days after he files his EEOC charge, the statute gives him 90 days to bring his action in court, see 42 U.S.C. S 2000e-

11

5(f)(1), while the borrowed state limitations period would give him two full years (640 additional days) to file his action. To complicate matters further, a complainant would have no guidance as to which limitations period controlled. In the instant case, Burgh unquestionably satisfied the timing requirements established by the text of the statute: He received the right-to-sue letter on December 1, 1998, and filed his civil action on February 26, 1999, 87 days later. There is no time period provided in the statute that Burgh failed to satisfy.

The Borough recognizes this conflict but nonetheless argues that the borrowed state limitations period should apply here, relying on a decision from the Middle District of Pennsylvania, Rode v. Dellarciprete , 646 F. Supp. 876 (M.D. Pa. 1986), aff'd in part, vacated in part , 845 F.2d 1195 (3d Cir. 1988). But the Borough misreads Rode. In Rode, the District Court dismissed a S 1983 claim as untimely under a borrowed state two-year limitations period. See Rode, 646 F. Supp. at 882. But the court did not dismiss the Title VII claim as untimely. In fact, a careful review of Rode shows that the District Court found plaintiff's Title VII allegations were not barred by laches, as alleged by defendants, since defendants had not shown that the delay had caused them any prejudice. See id. at 883.

Moreover, other courts of appeals have rejected the argument that state statutes of limitations should be borrowed in Title VII cases. The Ninth Circuit held that the time limits for filing a charge with the EEOC and for giving notice to the employer of that charge "are a Congressionally established statute of limitations" and there is no basis under the statute to import a different period from state law. See Kirk v. Rockwell Int'l Corp., 578 F .2d 814, 819 (9th Cir. 1978). Concurring specially, Judge Hufstedler stated that "Title VII's time provisions fully define the steps which must be taken by a Title VII litigant to preserve his or her right to sue. State statutes of limitations are not borrowed because there is no gap to fill." Id. at 824. The Sixth Circuit reached the same conclusion in Draper v. United States Pipe and Foundry Co., 527 F.2d 515, 522 (6th Cir. 1975), noting the specific time periods for filing a charge with the EEOC and for commencing a civil action after receipt of the

12

right-to-sue letter, and holding that "T itle VII establishes its own statute of limitations, and state law is irr elevant in determining whether a private individual has lost his right of action under Title VII through the passage of time."

We can also derive guidance from our decision in Waddell v. Small Tube Prods., Inc., 799 F .2d 69 (3d Cir. 1986), a case involving procedural delays similar to those in the instant case. In Waddell, the plaintiff filed a failure-to-rehire charge with the PHRC in February 1977; this charge was referred to the EEOC for cross-filing in March 1977. In April 1977, the PHRC dismissed the charge and notified the plaintiff, but not the EEOC, of that dismissal. The PHRC did not send any notification to the EEOC until November 1981, more than 4 years later. In the meantime, the plaintiff wrote two letters to the EEOC inquiring about his case, the first in April 1977, the second in September 1977. In May 1983, the plaintiff learned that he could request a right-to-sue letter, which he did; he r eceived the letter in June 1983 and brought suit in August 1983, within 90 days of receipt of the letter. The issue then was whether the plaintiff's claim should be barred by the equitable doctrine of laches, based on the plaintiff's failur e to diligently pursue his claim, either administratively or by seeking a right-to-sue letter at an earlier time. See id. at 74-75. We ultimately remanded the case to the District Court to determine whether the defendant had established the elements of a laches defense. See id. at 79-80. Ther e is, however, no mention in Waddell of any statute of limitations; nor is there any suggestion that the plaintiff had violated a statutory limitations period -- either federal or state-- in bringing his civil action more than seven years after filing the administrative charge and almost six years after his last letter to the EEOC.

We note, finally, that the limitations scheme provided for in Title VII is consistent with Congress's intent that most complaints be resolved through the EEOC rather than by private lawsuits. See Occidental Life, 432 U.S. at 366 (discussing Senate Report). Congress's concer n that the "fair operation" of Title VII required a time limitation was focused on when a charge was filed with the EEOC and a defendant received notice of that charge. Id. at 371. The

13

"benchmark, for purposes of a statute of limitations, is not the last phase of the multistage scheme, but the commencement of the proceeding before the administrative body." Id. at 372. Title VII establishes a clear period of 180 days following the alleged unlawful employment decision to file an administrative charge with the EEOC (or parallel state agency) and to provide notice of the char ge to the defendant ten days later. See 42 U.S.C. S 2000e–5(e)(1). This notice gives the defendant the opportunity to gather and preserve evidence in anticipation of court action. See Occidental Life, 432 U.S. at 372–73. Statutes of limitations exist, in part, to ensure such notice to the adversary. See Barnes v. The Am. Tobacco Co., 161 F .3d 127, 151–52 (3d Cir. 1998) ("The theory [of statutes of limitations] is that even if one has a just claim it is not unjust to put the adversary on notice to defend within the period of limitation.") (citations omitted).

Congress wanted cooperation and voluntary compliance to be the primary means of resolving claims in an informal and noncoercive manner. See Occidental Life, 432 U.S. at 367–68; Anjelino, 200 F.3d at 93 (holding that the statutory plan of Title VII was aimed at correcting discrimination through informal administrative conciliation). This goal of resolving problems by conciliation is better met by enacting a limitations period for filing a court action that runs from the receipt of the right–to–sue letter at the end of the administrative process rather than from the date of the unlawful employment practice.

For all the above reasons, we conclude that there is no gap in Title VII that requires the grafting on to it of any state limitations period. Burgh's Title VII claim, filed within the statutory period of 90 days from receipt of the right–to–sue letter from the EEOC, was timely filed and may go forward.

D. IS THERE A GAP IN THE PHRA LIMITA TIONS
       PERIODS

We turn now to Burgh's PHRA claim. This involves an issue of state law, requiring us, as a federal court sitting in diversity on this claim, to apply state substantive law,

14

statutory and decisional as interpreted by the highest court of the state. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994). In the absence of a reported decision on point by the Pennsylvania Supreme Court, we must look to the decisions of the intermediate appellate courts for guidance. See McKenna, 32 F.3d at 825. In the absence of guidance from the state supreme court or any inter mediate appellate courts, we must predict how the state supr eme court would resolve this issue if it were befor e that court. See Nationwide Ins. Co. v. Resseguie, 980 F.3d 226, 229 (3d Cir. 1992).

In its opinion, the District Court conflated T itle VII with the PHRA in applying the one-year period after filing the administrative complaint as the accrual of the time to file suit. The court held that the limitations period on the PHRA claim began running one year after Burgh hadfiled the administrative charge, on December 8, 1995, because at that point Burgh had exhausted his administrative remedies and could have brought his claim in court. The court held that this period for bringing a court action expired two years later.5

Like Title VII, the PHRA establishes two limitations periods: first, the administrative charge must be filed by a complainant with the PHRC within 180 days of the alleged discrimination, see 43 Pa. C.S. S 959(h); second, a court action must be filed within two years of the date that the PHRC gives the complainant notice of the closing of the administrative complaint. See 43 Pa. C.S.S 962(c)(2). As in Title VII, these periods represent the complete legislative determination as to the appropriate timing provisions under the PHRA. There is no basis for a court, particularly

_____

5. As it did on the Title VII claim, see supra note 2, the District Court calculated the PHRA dates improperly. The court started the clock on the PHRA claim on March 20, 1996, one year after the EEOC charge was filed. The court stated that this was to give the plaintiff the benefit of all
reasonable factual inferences. But thefiling of the EEOC charge is irrelevant to any limitations period under the PHRA. If the District Court was correct that the PHRA limitations period began to run one year after the filing of the PHRC charge, the clock would have expired on December 8, 1997.

15

a federal court sitting in diversity, to engraft any additional limitations periods as gap-fillers. There ar e no statutory gaps to be filled.

As we note in footnote 4, the Pennsylvania Superior Court in Raleigh v. Westinghouse Elec. Corp., 550 A.2d 1013, 1014 (Pa. Super. Ct. 1988), did apply the Pennsylvania two-year personal injury statute of limitations to bar plaintiff's claim. Raleigh, however, was decided in 1988, prior to the 1991 amendments to the PHRA that added the two-year limitations period from the dismissal of the administrative complaint now contained in S 962(c)(2). Because Raleigh is inconsistent with S 962(c) as amended, we will not follow it. We similarly decline to follow our dictum in Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 90-91 (3d Cir. 2000), which cited Raleigh in stating that Pennsylvania's two-year personal injury limitations period applies to PHRA claims. Finally, we disapprove the District Court decisions in Onibokun v. Berks County Children and Youth Servs. , Civ. No. 98-4402, 1999 WL 681697 (E.D. Pa. 1999) and Long v. Boar d of Educ. of City of Philadelphia, 812 F. Supp. 525, 534 (E.D. Pa. 1993),6 both of which applied the two-year limitations period to PHRA claims, running from the date of the plaintiff's receipt of the right-to-sue letter.

Unlike Title VII, the PHRA limitations period for bringing suit, S 962(c)(2), does not run from the date of receipt of the letter from the PHRC one year after filing, but from the date of notice that the PHRC closed the complaint. Mor eover, the PHRC one-year letter does not automatically close the complaint and trigger S 962(c)(2), as a r eview of the March 18, 1996, letter to Burgh illustrates. That letter provided that the "Commission is continuing to process your case, and we will make every effort to resolve it as soon as possible. If we are not notified otherwise, we will assume that you want the Commission to continue handling your case." The PHRC informed Burgh that it would close his complaint only if he filed an action in court. Furthermore,

_____

6. The Borough relies on the fact that we summarily affirmed the District Court in Long. See 8 F.3d 811 (3d Cir. 1993) (mem.). However, such a summary affirmance is not precedential and not binding on this panel.

16

there is nothing in the record to indicate that the PHRC ever closed Burgh's administrative char ge. Thus, the S 962(c)(2) two-year period never began to run on Burgh's state claim.

Nor under the PHRA was Burgh ever requir ed to commence litigation. The District Court relied on the Pennsylvania Superior Court decision in Snyder v. Pennsylvania Ass'n of Sch. Retirees, 566 A.2d 1235 (Pa. Super. Ct. 1989) and the Middle District of Pennsylvania decision in Rogers v. Mount Union Borough by Zook, 816 F. Supp. 308 (M.D. Pa. 1993), to conclude that Bur gh could have brought suit on the one-year anniversary of the filing of the administrative claims and the limitations clock started on that date. In Snyder, 566 A.2d at 1242, the Superior Court held that a plaintiff could pr oceed into court, even absent the issuance of a right-to-sue notice, on a discrimination charge that had been br ought before the PHRC and had remained there for at least one year. In Rogers, 816 F. Supp. at 316, the court cited Snyder for the proposition that the lack of issuance of a right-to-sue notice does not bar the civil action on the grounds of failure to exhaust.

Both cases are distinguishable. In both, the plaintiffs had gone to court without having received right-to-sue notices and, in both, the courts were addressing and rejecting the defendants' argument that the claims should be dismissed because the plaintiffs had failed to exhaust administrative remedies. Both courts held that the expiration of the one-year period in S 962(c)(1) was sufficient exhaustion under the statute. These cases stand for the proposition that a PHRA plaintiff may, after one year , with or without a letter from the PHRC, forego the administrative process and bring his discrimination claim in court.

Neither case, however, stands for or supports the proposition that a plaintiff must do so on pain of losing that claim to a rigid statute of limitations. In fact, we can predict that a more appropriate view of Pennsylvania law would hold that a plaintiff should not be required to cut short the administrative process in favor of litigation. This prediction is supported by the legislative policy underlying the PHRA, as discussed by the Pennsylvania Supreme Court in Clay,

17

supra. The Supreme Court held that the state legislature intended "that the PHRC would bring to bear particular expertise in handling discrimination cases." Clay, 559 A.2d at 919. The legislature sought to create an administrative scheme that would ensure maximum use of the PHRC's expertise in the area of unlawful discrimination. See id. at 920 (quoting Lukus, 419 A.2d at 455). The PHRC is granted exclusive jurisdiction for one year in order to carry out its expert function. See Clay, 559 A.2d at 920 (quoting Lukus, 419 A.2d at 455); see also Clay, 559 A.2d at 921 (holding that parties were restrained from judicial recourse for a period of one year after bringing an administrative charge). It follows that the policy underlying the PHRA, like the policy underlying Title VII, is to per mit the administrative process to continue to completion and to allow the PHRC adequate time to resolve the case, rather than having the plaintiff cut short that process and r esort to litigation.

We conclude, therefore, that the limitations period for Burgh to bring his PHRA action did not begin to run on the one-year anniversary of the filing of his PHRC claim. Because the PHRC never closed the administrative complaint, the limitations period on his PHRA claim never started. The state claim was timely filed and may go forward.

IV. CONCLUSION

For the foregoing reasons, the statute of limitations did not lapse either on Burgh's Title VII claim or on his PHRA claim; both claims are timely and both may go forward. We will reverse the order of the District Court granting summary judgment in favor of the Borough and r emand this matter to the District Court for further pr oceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

18