**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-4469

DEBORAH Y. WOOD,
Appellant

v.

UNIVERSITY OF PITTSBURGH; MICHAEL HRITZ

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court  No. 2-07-cv-00899
District Judge: The Honorable Gary L. Lancaster

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 17, 2010

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

Filed: September 23, 2010

OPINION

SMITH, *Circuit Judge.*

In this employment discrimination and civil rights action, we are asked to

review the District Court's grant of summary judgment against an employee whose

position was eliminated following a department-wide reduction in force.  The

District Court held that the employee failed to come forth with evidence sufficient to establish that she (1) suffered discrimination on the basis of gender, (2) was subjected to a hostile work environment, (3) was the victim of unlawful workplace retaliation, (4) was denied equal protection of the laws, and (5) was deprived of her constitutional right to due process. For the reasons set forth below, we will affirm.

I.

Appellant Deborah Y. Wood was employed as a systems analyst in the Systems Section of the University of Pittsburgh's National Surgical Adjuvant Breast & Bowel Project Biostatistical Center ("NSABP"). Appellee Michael Hritz was the supervisor of NSABP Systems Section personnel. At the time Wood was hired, the Section employed a total of six individuals; Wood was the Section's sole female and its only African American employee.

NSABP is a clinical trials group whose financial existence depends upon the receipt of non-university grant funding. In 2007, approximately ninety percent of NSABP's financing was provided by National Institute of Health grants. When Wood commenced her employment with NSABP, she was provided a retention letter expressly stating that "the continuation of this position is contingent upon the renewal of these [non-university grant] funds."

Wood testified that her first several years of employment were unremarkable. In 2005, however, she became convinced that someone was tampering with her office computer. Over the next several months, Wood repeatedly advised Hritz that her computer had been remotely accessed by an unknown user. She also alleged that icons were removed from her computer; that she "lost control" of both her mouse and keyboard; that the number "666" appeared on her office calculator "thousands of times"; and that someone entered her office without permission when she was not present. Hritz responded to these allegations by placing a lock on Wood's office door, purchasing and installing software to monitor the usage of Wood's computer, reviewing logs to determine whether Wood's computer had been remotely accessed, and authorizing an individual from the university's Computing Services and Systems Development Department ("CSSD") to review network activity related to Wood's computer. After months of investigating her complaints, Hritz concluded that Wood's computer was not the subject of any improper tampering.

Wood was not satisfied with this determination. In June 2006, she contacted the university's Human Resources Department to convey her dissatisfaction. The Human Resources Department thereafter commenced an investigation of its own. In addition, Hritz, CSSD, and Dr. Joseph Costantino, the director of NSABP, continued their investigative efforts throughout the summer of

3

2006. The hard drive of Wood's computer was reformatted, she was provided with at least one new computer, and CSSD reviewed additional event logs tracking the usage of Wood's computer. Hritz alone spent over 150 hours attempting to uncover the source of Wood's complaints. In the end, each of these various inquiries reached the same determination: nothing improper had transpired with respect to Wood's computer.

In November 2006, Wood contacted the campus police to report that someone had broken into her locked office. This allegation led to an investigation by the university police department, as well as additional investigative measures by Hritz, CSSD, and Costantino. CSSD assigned Kevin Johnson, a senior information security analyst, to conduct a forensic inspection of Wood's hard drive. Johnson devoted over 200 hours to this inquiry, only to conclude that Wood's computer was not accessed improperly. The university police likewise unearthed no evidence of inappropriate or unlawful activity. Wood nonetheless considered these investigative efforts to be "inadequate." Consequently, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 19, 2006, alleging that she was the victim of gender discrimination.

In the spring of 2007, Costantino learned that the National Institute of Health intended to reduce its funding of NSABP by over two million dollars. He therefore determined that a reduction in the NSABP employment rolls was

4

necessary to maintain department productivity. Costantino elected to terminate department employees with the lowest job classifications. Wood was one of seventeen employees selected for discharge. On June 28, 2007, Costantino announced to the staff that a reduction in force was necessary and named those employees whose positions would be terminated. After his announcement, however, Costantino offered Wood the opportunity to interview for a new position in another section of NSABP. Wood declined this offer, and on July 12, 2007, she was formally discharged.

On the day of her formal discharge, Wood served the university with a complaint asserting gender and race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2, *et seq.*, section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951, *et seq*. The District Court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and dismissed the racial discrimination claims because they were not administratively exhausted before Wood initiated federal suit. Following a period of discovery, the District Court granted summary judgment in favor of the university and Hritz on all remaining claims. Wood timely appealed the District Court's summary judgment order and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We "exercise plenary review over the District Court's grant of summary judgment and apply the same standard that the District Court should have applied." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (quotation marks omitted). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences from the evidence must be drawn in her favor. *Conopco, Inc. v. United States,* 572 F.3d 162, 165 (3d Cir. 2009).

## III.

Wood alleges that appellees violated Title VII by (1) discriminating against her on the basis of gender,[1] (2) fostering a hostile work environment, and (3) retaliating against her after she engaged in protected activity. Wood offers no

---

[1] Our analysis of gender discrimination claims under the Pennsylvania Human Relations Act ("PHRA") is identical to our analysis under Title VII. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). Therefore, we do not separately address the PHRA claim.

direct evidence of gender discrimination,[2] so we must analyze her allegations

under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973). *See, e.g.*, *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313,

318-19 (3d Cir. 2000). *McDonnell Douglas* requires the plaintiff to shoulder the

initial burden to make out a prima facie case of discrimination. If the plaintiff

meets this requirement, the burden of production shifts to the defendant to

articulate a legitimate, non-discriminatory rationale for the employment action.

Should the defendant satisfy its burden, the presumption of discriminatory action

is rebutted and the plaintiff must demonstrate that the defendant's stated reasons

are pretextual. *See Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007).

To make out a prima facie claim for employment discrimination, a Title VII

plaintiff must show (1) she belongs to a protected class, (2) she was qualified for

the position in question, (3) she was subjected to an adverse employment action,

and (4) the existence of circumstances which give rise to an inference of

prohibited discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S.

---

[2] Wood's brief contains passing references to her contention that she suffered discrimination on the basis of race. The race discrimination claims were dismissed by the District Court at the pleading stage, however, because Wood failed to exhaust her administrative remedies. Wood does not directly challenge the District Court's dismissal order, nor does she proffer any argument suggesting the order was erroneous. As a result, she has waived the issue for purposes of appeal. *See Kach v. Hose*, 589 F.3d 626, 642 (3d Cir. 2009) (stating that "it is well settled that 'a passing reference to an issue will not suffice to bring that issue before this court'" (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

248, 253 (1981); *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999). In a reduction in force suit, a plaintiff satisfies the fourth element by demonstrating that the employer retained similarly situated employees who were not within the protected class. *See Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249-50 (3d Cir. 2002); *In re Carnegie Ctr. Assocs.*, 129 F.3d 290, 294-95 (3d Cir. 1997). There is no question that the first three prima facie requirements are satisfied herein, but the record is devoid of evidence which satisfies the final element. To the contrary, it is undisputed that NASBP terminated seventeen employees with the lowest job classifications. Wood does not identify a single individual whose job classification was equal or inferior to hers and who retained his or her position.[3] In other words, there is no evidence that employees similarly situated to Wood were retained. Her claim fails, then, for she cannot establish that the fact of

---

[3] After Wood's position was eliminated, she was offered the opportunity to interview for a vacant position in another section of NSABP. Wood declined this offer, which was then extended to an employee named Jidong Zou. Although Zou's job classification was lower than that held by Wood, it is undisputed that Zou was offered the position only after Wood turned it down. Therefore, Zou's retention is not evidence of the fourth prima facie element.

8

her termination raises an inference of discriminatory animus.[4] *See Pivirotto*, 191 F.3d at 352 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977), and explaining that "[t]he central focus of the inquiry . . . is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin" (internal quotation marks omitted)).

Wood next argues that she was subjected to a hostile work environment. To make out a Title VII hostile work environment claim, an employee must show that "(1) the employee suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability." *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)) (internal quotations marks omitted). Wood argues that she suffered persistent harassment which *must have been* the result of gender bias. Specifically, she

---

[4] Even if we were to conclude that Wood made out a prima facie case of discrimination, appellees have articulated a legitimate non-discriminatory purpose for her termination: namely, NASBP's budget was reduced and the department was required to trim the employment rolls. Wood offered no direct or circumstantial evidence to discredit this proffered reason, nor has she adduced evidence suggesting that discrimination was more likely than not a motivating or determinative cause behind her discharge. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

claims that her computer was the recurrent object of tampering, that the university's investigation of her allegations was "insufficient," and that Hritz and her coworkers "acted differently" toward her and treated her with disrespect in office meetings.

The District Court held that Wood's proffered evidence failed to establish that she was the subject of intentional gender discrimination. We agree. University employees went to extraordinary lengths to investigate Wood's tampering allegations and there is simply no evidence to suggest that any aspect of their inquiry was influenced by gender bias. Wood's vague assertion that her colleagues "acted differently" toward her and treated her with disrespect is likewise insufficient to meet Title VII's prima facie requirement. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (explaining that Title VII does not impose a "general civility code" upon workplace conduct).

Wood also contends that she was the victim of unlawful workplace retaliation. To establish a prima facie case of retaliation, an employee must show (1) that he or she engaged in protected activity, (2) that he or she was subjected to an adverse action by the employer, and (3) the existence of a causal link between the employee's protected activity and the purportedly adverse action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). The District Court held that Wood engaged in protected activity when she filed complaints with the EEOC,

10

that Wood's July 12, 2007 discharge constituted an adverse employment action, and that the discharge was causally linked to her protected activity. Although we are not convinced that Wood has satisfied the third prima facie element, we agree with the District Court's determination that appellees effectively rebutted any inference of discriminatory action. The university produced undisputed evidence that NSABP's budget was reduced, which in turn necessitated a workforce reduction. What is more, Costantino selected positions for elimination by pinpointing those employees with the lowest job classifications. Wood was one such employee. Because she offers no evidence to rebut the university's legitimate, non-discriminatory rationale,[5] Wood's retaliation claim is without merit.

Finally, Wood raises equal protection and due process claims pursuant to § 1983. The showing required to prove a § 1983 gender discrimination claim is identical to that required by Title VII, *see Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir. 1997); Wood's failure to make out a case of Title VII gender discrimination is thus fatal to her action arising under the Equal Protection Clause.

---

[5] According to Wood, the reduction in NSABP's workforce was devised specifically to "get rid of" her. This explanation is entirely speculative and does not constitute direct or circumstantial evidence from which a factfinder could reasonably disbelieve the university's articulated reasons, or upon which it could conclude that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the university's action. *See Fuentes*, 32 F.3d at 764.

11

The due process claim is likewise defective, for the safeguards of the Due Process Clause "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 401 (3d Cir. 1992) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)) (internal quotation marks omitted). Wood contends that she was "entitled to have [her] claims of electronic harassment and interference properly investigated," and that the university failed to "enact proper policies regulating incident and forensic investigations." However, Wood identifies no statutory or regulatory requirement mandating that the university follow a given set of investigative procedures. Wood therefore has no constitutionally protected life, liberty, or property interest in "proper" university investigative procedures.

For the reasons set forth above, the order of the District Court granting summary judgment in favor of the appellees is affirmed.