NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4484
_____

KENNETH HUGGINS, SR.,
Appellant
v.

COATESVILLE AREA SCHOOL DISTRICT; MARIA WALKER; RICHARD COMO;
JOHN DOE, Whose identity is unknown individually and in their own official capacity;
PEDRO QUINONES,

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 07-cv-04917)
District Judge: Honorable Gene E.K. Pratter
_____

KENNETH HUGGINS, SR.,
Appellant
v.

COATESVILLE AREA SCHOOL DISTRICT; RICHARD COMO; PEDRO
QUINONES; JOHN DOE, Whose identity is unknown individually and in their own
official capacity,

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 09-cv-01309)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
October 28, 2011

_____

Before: SLOVITER, GREENAWAY, JR., and ALDISERT, *Circuit Judges.*

(Opinion Filed: November 17, 2011 )

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

Kenneth Huggins filed two separate lawsuits in the District Court for the Eastern District of Pennsylvania against the Coatesville Area School District ("the District") and various of its employees[1] alleging that he had been the victim of racial discrimination in the workplace and subject to unlawful termination and retaliation for complaining about that discrimination. After the District Court's rulings on the various motions to dismiss, three claims remained in each lawsuit: a 42 U.S.C. § 2000e ("Title VII") claim, a Pennsylvania Human Rights Act ("PHRA") claim, and a 42 U.S.C § 1983 claim. Defendants filed motions for summary judgment on the remaining claims in both actions (the "First Action" and the "Second Action").

_____

[1] The first lawsuit named District employees Maria Walker, Richard Como, John Doe and Pedro Quinones. The second lawsuit named District employees Como, Quinones, and John Doe.

2

The District Court issued an order granting both motions and entered judgment in favor of Defendants. Huggins now appeals this order, [2] claiming that the District Court (1) erred in granting summary judgment on the Title VII and PHRA claims; and (2) erred in holding that Huggins had failed to exhaust his administrative remedies as to the claims in the Second Action.

Huggins failed to administratively exhaust the claims in the Second Action and no genuine dispute remains as to the Title VII and PHRA claims in the First Action. We will affirm.

## I. BACKGROUND

We write primarily for the benefit of the parties and recount only the essential facts.

Huggins's employment with the Coatesville Area School District (the "District") began in 1999. By 2003, he was a custodian at Gordon Middle School ("Gordon"). Dr. Marie Walker became the principal of Gordon in 2004. Huggins believed Walker to be "very rude" to him and other employees. (App. 270.) At his deposition, Huggins testified that Walker once asked him, "Hey Ken, is that your bomb parked out there in my parking spot[?]". (*Id.* at 271.) Huggins believed that term insulted his vehicle and its

---

[2] Huggins does not appeal the entry of summary judgment on the § 1983 claims. We need not address them further.

3

condition, although he acknowledged that he did not consider the comment to be racially discriminatory.

On two other occasions, according to Huggins, Walker made racially charged statements to him.[3] First, on one occasion, when Walker and Huggins were alone in her office, Walker told Huggins that she had visited Africa and a number of Caribbean countries. When Huggins asked her what that meant, she responded, "I know how to deal with black people. . . . I know how to put a hold on black people. . . . [I] know how to put black people in check." (*Id.* at 273.) Huggins testified that these comments "sealed the deal," making him realize that "she was a racist." (*Id.* at 274.)

On another occasion in November 2005, Walker approached Huggins and said, "[H]ey[,] boy with the trash bag, come here." (*Id.* at 305.) When Huggins responded, "[E]xcuse me," Walker repeated herself and "laugh[ed] with a smirk on her face." (*Id.*) Palpably upset, Huggins went to the adjacent office of Roger Johnson[4] to discuss the incident. Shortly thereafter, Huggins reported the incident to Dr. Major Poteat, the Assistant Superintendant of the District and Walker's supervisor. Huggins also told

---

[3] In her deposition, Walker disputed that either of these events occurred (App. at 411, 415.) Appellees now argue that even if she had made the comments, as alleged, Huggins's claims would still fail as a matter of law.

[4] Johnson's title is absent from the record. Huggins, in his deposition, said only, "He used to work for the Y. The school district hired him." (App. at 303.)

4

several Gordon teachers about what had occurred, and they corroborated that he had been upset.

Approximately one month later, following allegations from a group of three fourth-grade students, the District initiated a sexual harassment investigation against Huggins. The students, who were in the English as a Second Language program, said that they were afraid of Huggins, who they believed looked at them and at teachers inappropriately. Walker reported their allegations to the District's human resources staff. On December 22, 2005, Walker, along with human resources staff, met with the children and their parents. That same day, Huggins was placed on a ten-day unpaid leave. His employment was subsequently terminated as a result of the investigation.

After his termination, Huggins filed a grievance under the terms of his collective bargaining agreement, leading to arbitration. In late March, 2007, the arbitrator determined that the lead complaining witness's testimony was "grossly unreliable," uncorroborated, and likely the result of misperception. (*Id.* at 503.) The arbitrator further determined that Huggins's dismissal had been improper and therefore recommended that he be reinstated to his former position with no loss of pay or benefits. Huggins was reinstated on April 5, 2007 and assigned to the District's "9-10 Center," where he was placed on the 10:00 p.m. to 6:30 a.m. shift. Prior to his termination, he had been assigned to the 2:30 p.m. to 11:00 p.m. shift at Gordon.

Huggins filed an unfair labor practice charge through his union. The matter was settled, without arbitration, when Huggins agreed to continue working at the 9-10 Center, as his position at Gordon had been filled.

In January 2006, shortly after his termination, Huggins filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"). The complaint alleged that Huggins had been discriminated against on the basis of his race. Count I described the incident in which Walker called him "boy," while Count II alleged retaliation after Huggins complained about the comment. Huggins's attorney wrote the PHRC several times subsequent to the arbitrator's March 2007 decision to inform the Commission of that decision. The letters sought an expansion of the PHRC's investigation to encompass Huggins's claims that his reinstatement at a different site and on a different shift constituted retaliation for the favorable decision of the arbitrator. Huggins filed his first complaint in federal court on November 21, 2007. On December 12, 2007, the PHRC informed Huggins that his complaint had been administratively closed.

The first action, No. 07-cv-04917 (E.D. Pa. filed Nov. 21 2007) (hereinafter "the First Action"), brought seven claims against the District, Dr. Marie Walker, Richard Como, John Doe, and Pedro Quinones[5] (collectively, "the Defendants"). The First Action alleged that Walker instigated and directed the sexual harassment investigation in

---

[5] Quinones was the Manager of Custodial Grounds for the District and Huggins's supervisor. Como's title is unclear from the record, but he was a member of the District's custodial staff.

6

retaliation for Huggins's complaint about her remarks. Huggins also claimed that his assignment after the favorable arbitration decision was undesirable and that he was assigned more duties there than white co-workers.

The District Court dismissed four of the claims in the complaint and allowed three to remain in the case: a Title VII claim against the District, a Pennsylvania Human Relations Act ("PHRA") claim against the District and Walker, and a 42 U.S.C. § 1983 discrimination claim against Walker.

Subsequently, Huggins filed a second action, No. 09-cv-01309 (E.D. Pa. filed Mar. 26, 2009) (hereinafter, "the Second Action") naming the District, Richard Como, Pedro Quinones, and John Doe. This complaint claimed that retaliation had continued after the filing of the First Action. Specifically, it averred that Huggins was told he could not be transferred back to Gordon unless he dropped the First Action. The District Court granted, in part, and denied, in part, a motion to dismiss the Second Action, leaving three claims similar to those remaining in the first action: a Title VII claim against the District, a PHRA claim against the District, and a 42 U.S.C. § 1983 claim against Richard Como and Pedro Quinones.

The District Court entered summary judgment in favor of Appellees on all the remaining claims in both actions. Huggins filed a timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e. It had jurisdiction over the

7

state law claims pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

We review the District Court's order granting summary judgment de novo. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).  "To that end, we are required to apply the same test the district court should have utilized initially." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009) (internal quotation marks omitted).

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur,* 601 F.3d at 216 (quoting *Nicini v. Morra,* 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc) (citing Fed. R. Civ. P. 56(c)).[6]  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Id.* (quoting *Ridgewood Bd. of Educ. V. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999)).  In determining whether summary judgment is warranted "[t]he evidence

---

[6] Fed. R. Civ. P. 56 was revised in 2010.  The standard previously set forth in subsection (c) is now codified as subsection (a).  The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'"  Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

8

of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chambers*, 587 F.3d at 181.

## III.  ANALYSIS

### A.  Exhaustion of Administrative Remedies

Before filing an employment discrimination claim under Title VII, an employee alleging an unlawful employment practice must timely file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the practice.  28 U.S.C. § 2000e-5(b), (e)(1), (f)(1).  Similarly, before filing a PHRA claim in court, an employee must file a complaint with the PHRC.  *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001).  Where an individual has filed with the PHRC, or any other state or local agency with a function parallel to that of the EEOC, the time for filing with the EEOC is extended: the aggrieved individual may file until 300 days after the occurrence of discrimination or thirty days after the PHRC's proceedings have been terminated, whichever is earlier.  42 U.S.C. § 2000e-5(e)(1).  A complainant may not bring a Title VII claim without receiving a right-to-sue letter from the EEOC, indicating that he has exhausted his administrative remedies; he may not bring PHRA claims for one year after filing with the PHRC. 43 Pa. Cons. Stat. § 962(c)(1); *Burgh*, 251 F.3d at 470, 471.

The District Court granted summary judgment to Appellees on the Title VII and PHRA claims in the Second Action because Huggins had failed to exhaust his

9

administrative remedies regarding those claims. Huggins argues that this ruling was erroneous because correspondence from the PHRC revealed that it would have been futile for him to file a complaint with them. We disagree.

Huggins filed his initial complaint with the PHRC on January 27, 2006, immediately after his initial suspension. That complaint contained two counts: first, a discrimination count, describing the incident in which Walker called Huggins "boy;" and second, a retaliation count, alleging that Huggins was suspended as a result of his complaint about the incident. In the spring of 2007, after Huggins had been reinstated at the 9-10 Center, Huggins's attorney sent the PHRC several letters informing it of the arbitrator's decision and of the continuing retaliation against Huggins. In August 2007, the attorney sent an affidavit from Huggins detailing the alleged continued retaliation and explicitly requested that an additional complaint be filed based on that affidavit. However, on December 12, 2007, after Huggins had filed the First Action, the PHRC informed counsel that the entire matter had been administratively closed.

Counsel contacted the PHRC again in March 2009, referencing the case number from the earlier PHRC complaint and alleging continued unlawful action that had occurred in September 2008. The PHRC responded with a letter indicating that the earlier case had been closed in 2007 after a complaint containing the same allegations was filed in federal court. The PHRC's letter also informed counsel that, while the statute of limitations for filing with the PHRC for the September 2008 events had elapsed, Huggins could still file with the EEOC regarding these incidents.

10

Under these facts, Huggins' futility argument fails. Far from indicating that no administrative remedy was available to Huggins, the PHRC actually directed him to a specific administrative avenue—the EEOC—through which his claim could proceed. Accordingly, the District Court was correct to grant summary judgment on the Title VII and PHRA claims in the Second Action.

## B. Title VII and PHRA Claims

The First Action brought claims under Title VII and the PHRA based on (a) the racially hostile work environment that Appellees had allegedly created; and (b) the retaliation which Appellees had allegedly subjected Huggins to when he complained. The District Court granted summary judgment in favor of Appellees on these claims, noting that the PHRA is interpreted in accord with analogous federal statutes such as Title VII. *See Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical. . . .").

In order to make out a hostile work environment claim, an employee must demonstrate that he experiences harassment so "severe and pervasive" that it altered the conditions of his employment and created "an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "Offhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788 (internal quotation marks omitted).

11

Huggins alleges only three comments he considered to be racially discriminatory, and he acknowledged at his deposition that one, although offensive to him, was not racial in nature. "Hostile environment harassment claims must demonstrate a continuous period of harassment, and two comments do not create an atmosphere" of harassment. *Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 863 (3d Cir. 1990). The District Court was correct to find that Huggins's hostile work environment claim must fail.

In order to establish a prima facie retaliation case under Title VII, a plaintiff must show that: "'(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). The District Court correctly noted that, since the sexual harassment investigation that led to Huggins's suspension and termination was initiated in response to complaints from students, however ill-founded, that investigation cannot be causally related to Huggins's complaint about Walker's comment. The District's failure to strictly comply with its own procedures around sexual harassment allegations does not, despite Huggins's protestations, ameliorate the import of this fact. The District Court's entry of summary judgment on this issue was therefore correct.

## IV. CONCLUSION

For the reasons set forth above, we will affirm the judgment of the District Court.

12