Thomas RYALES, Plaintiff,

v.

PHOENIXVILLE SCHOOL DISTRICT, George Rocco, Jay Hassan, Dr. Robert Urzillo, and Edward Monastra, Defendants.

No. 01–50.

United States District Court, E.D. Pennsylvania.

Nov. 14, 2001.

Richard E. O'Neill, The O'Neill Law Office, Norristown, PA, for Plaintiff.

Joseph P. Hoffman, Stevens & Lee, Lancaster, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court are the Defendants' Motion for Summary Judgment and Memorandum of Law in Support of their Motion for Summary Judgment (Document No. 8 and 9) and Plaintiff's Reply to Defendants' Motion for Summary Judgment and Memorandum of Law in Support (Document No. 11 and 12). For the reasons set forth below, the Summary Judgment Motion is granted in part and denied in part.

## I. INTRODUCTION

On January 4, 2001, Plaintiff Thomas Ryales ("Ryales" or "Plaintiff"), a teacher for the Phoenixville School District, filed a complaint alleging racial discrimination including wrongful termination and retaliation under Title VII and the PHRA. In his Complaint, Plaintiff named his employer, the Phoenixville School District (the "School District" or "Defendant"), as well as George Rocco ("Rocco"), Jay Hassan ("Hassan"), Dr. Robert Urzillo ("Urzillo"), and Edward Monastra ("Monastra")(collectively referred to as the "Individual Defendants"), all of whom are individual employees of the Phoenixville School District. All defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to each of Plaintiff's claims.

## II. DISCUSSION

### A. Legal Standard

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 2548, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. Claims Against the Individual Defendants

The Individual Defendants move for judgment as to each of the Title VII and PHRA claims against them. Plaintiff concedes that he has not set forth either a Title VII or PHRA claim against any of the Individual Defendants. Thus, summary judgment is granted in full as to all of the Individual Defendants. *See Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 184 (3d Cir.1997), *quoting Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir.1996)(" 'Congress did not intend to hold individual

employees liable under Title VII' "); *see also Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir.1996)(plaintiff cannot maintain a cause of action against an individual under the PHRA unless they allege that the individual is a supervisory employee who aided and abetted the discriminatory practices).[1]

## C. *Racial Discrimination Claim*

The School District argues that summary judgment should be granted as to Plaintiff's Race Discrimination Claim because Plaintiff did not timely file his Complaint with regard to this claim. Plaintiff filed his initial racial discrimination claim with the EEOC on March 23, 1999. Plaintiff received a right-to-sue letter from the EEOC regarding the racial discrimination claim on October 5, 1999. However, Plaintiff did not file the Complaint in this case until January 4, 2001, well over a year after he received the right-to-sue letter. Plaintiff concedes that he did not timely file the racial discrimination claims and concedes that summary judgment should be granted as to these claims. *See* 42 U.S.C.A.2000e–5(f)(1) (providing ninety days to bring civil action after the Commission dismisses a charge); *see also Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001)(90 day period for filing the court action is treated as a statute of limitations). Therefore, summary judgment will

be granted as to the racial discrimination claims.[2]

## D. *Retaliation Claim*

### 1. *The Timeliness of the Retaliation Claim*

Defendant argues that Plaintiff's retaliation claim should be dismissed because Plaintiff did not timely file his Complaint with regard to this claim. Plaintiff filed a second charge with the EEOC on November 4, 1999 in which he alleged that the School District fired him in retaliation for filing the first racial discrimination charge with the EEOC. The EEOC issued a right-to-sue letter regarding the retaliation charge on October 3, 2000. Plaintiff had ninety days from the date of *receipt* of the notice from the EEOC to file a complaint regarding that claim. *See* 42 U.S.C.A. 2000e–5(f)(1) (providing that if the Commission dismisses a charge, the agency "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought....").

■ Plaintiff does not know the exact date he received the right-to-sue letter. *See* Plaintiff's Dep. Tr. at p. 23, ll. 10–12. The Third Circuit has held that when the exact date of receipt is not known, the Court will presume that the date of receipt is three (3) days after the date the EEOC issues the letter. *Seitzinger v. Reading Hospital and Medical Center*, 165 F.3d

---

1. Plaintiff has conceded that he has no PHRA claims against the Individual Defendants and has agreed that summary judgment should be granted as to the PHRA as well as the Title VII claim against these defendants. Thus, the Court will not address whether PHRA claims would lie against the "supervisory" Individual Defendants for their alleged direct discriminatory conduct. *See, e.g., Glickstein v. Neshaminy School District*, CIV.A. No. 96–6236, 1997 WL 660636, * 12 (E.D.Pa. Oct.1997)(under PHRA supervisory employees can be held liable for direct acts of discrimination).

2. Plaintiff also concedes that summary judgment should be granted as to the wrongful termination claim. To the extent Plaintiff has plead a separate wrongful termination claim, summary judgment is granted as to that claim as well. *See generally Kingcaid v. Janney Montgomery Scott, Inc.*, CIV.A. No. 99–4065, 1999 WL 1045148, n. 1 (E.D.Pa. Nov.17, 1999)(recognizing that PHRA preempts common law tort claims for wrongful discharge).

236, 239 (3d Cir.1999)(in the absence of evidence regarding the date of receipt, "courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it").

Since the EEOC mailed the right-to-sue letter regarding Plaintiff's retaliation charge on October 3, 2000, Plaintiff had 90 days from October 6, 2000 to file his Complaint. Plaintiff's Complaint was filed on January 4, 2001, which is within the 90 day limitations period. Therefore, Plaintiff's retaliation claims were timely filed.

### 2. The Adequacy of Plaintiff's Pleading

■ Defendants also argue that Plaintiff cannot maintain a retaliation claim because he did not sufficiently plead a claim for retaliation in his Complaint. Plaintiff was not represented by counsel when he filed his Complaint; rather, he was proceeding *pro se*. Pleadings filed by *pro se* litigants are not held to as high a pleading standard as pleadings filed by counsel, and the Court will liberally construe *pro se* pleadings. *See, e.g., Lumumba v. Philadelphia Department of Human Services*, No. CIV.A. 98–5195, 1999 WL 345501, *2 (E.D.Pa. May 21, 1999), *citing Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ We find that Plaintiff has sufficiently stated a claim for retaliation. In his Complaint, Plaintiff alleges that he filed the race discrimination claim with the EEOC and then he "became the subject of random independent observations and scrutiny" and received his second unsatisfactory rating. *See* Plaintiff's Complaint at ¶¶ 23 and 24. Plaintiff further alleges in Count II that "Defendant retaliated and discriminated against Plaintiff in making enforcement and termination of Plaintiff's employment contract due to racial animous [sic]." *Id.* at ¶ 32.

The Court recognizes that Plaintiff's retaliation claim could be more artfully plead. However, given the liberal pleading standard afforded *pro se* plaintiffs and given that Defendant had knowledge that Plaintiff intended to pursue a retaliation claim because Plaintiff had filed a retaliation charge with the EEOC and had received a right-to-sue letter from the EEOC regarding the retaliation charge, the Court will allow the retaliation claim to go forward.

### 3. The Retaliation Claim

■ Plaintiff's retaliation claim arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* When evaluating retaliation claims under Title VII, courts apply the well-known burden shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000)(discussing burden shifting framework); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)(same).

■ The first step in this framework is to establish a *prima facie* case. In order to state a *prima facie* case of retaliation under Title VII, a plaintiff must show: 1) that he engaged in protected activity, 2) that the employer took adverse action against him, and 3) that a causal link exists between the protected activity and the employer's adverse action. *See Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997).

■ Plaintiff has presented sufficient evidence to establish the first prong of a *prima facie* case because he filed a race discrimination claim with the EEOC on March 23, 1999. Filing a discrimination claim with the EEOC is a well recognized

protected activity. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997).

■ Plaintiff has also presented sufficient evidence to establish that he suffered an adverse employment action, the second prong of a *prima facie* case. "To constitute an adverse employment action, the retaliatory conduct must 'alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.' " *Lee v. Gecewicz*, No. CIV.A. 99–158, 1999 WL 320918, *4 (E.D.Pa. May 20, 1999)(quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir.1997)). Plaintiff suffered the following adverse employment actions. On April 30, 1999, the Principal of the Phoenixville Area High School told Plaintiff he was giving him an unsatisfactory performance evaluation. This constitutes an adverse employment action because Plaintiff received an unsatisfactory evaluation in February and the Pennsylvania Public School Code provides that two unsatisfactory evaluations during a four month time frame is cause for termination. *See* 24 P.S. § 11–1122(a). Further, on June 7, 1999, the Superintendent of the School District informed Plaintiff that he was recommending Plaintiff's termination at the next School Board meeting. Both of these actions qualify as "adverse actions."

Finally, Plaintiff has presented sufficient evidence to satisfy the third prong of a *prima facie* case because there is sufficient temporal proximity between the protected activity and the adverse action. *See Kachmar*, 109 F.3d at 177 (temporal proximity can be " 'sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.' ")(internal citations omitted). Here Plaintiff filed his race discrimination claim with the EEOC on March 23, 1999 and the first potential adverse action occurred on April 30, 1999.[3] This time frame presents a sufficient temporal proximity to satisfy the third prong of a *prima facie* case.[4]

■ The burden now shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824. Defendant offers the following non-discriminatory reasons for the adverse employment action: 1) Plaintiff's unsatisfactory classroom performance; 2) Plaintiff's violation of the school's internet use policy; and 3) Plaintiff's failure to report a "bomb threat" to the principal of the school. Defendant has met its burden.

■ Plaintiff must now demonstrate that the Defendant's stated reasons for the adverse employment action are not the true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1825. There are two ways by which a plaintiff can fulfill its burden at summary judgment with respect to showing pretext. The plaintiff must point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

---

**3.** This adverse action would have "occurred" on April 13, 1999, the initial date the Principal wanted to meet with Plaintiff. However, Plaintiff postponed the meeting until April 30, 1999.

**4.** We also find that the causation prong of the *prima facie* case is met when viewing the inferences from all of the evidence in the light most favorable to Plaintiff. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 283–86 (3d Cir.2000)(evidence that demonstrates pretext can also be used to establish *prima facie* case).

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir.1999) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994) and *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir.1996) (en banc)).

■ Plaintiff argues that Defendant's legitimate, non-discriminatory reasons for his termination are a pretext for discrimination for the following reasons. First, Plaintiff argues that a jury could disbelieve that he was terminated for unsatisfactory performance based on the Principal's admission that the first unsatisfactory evaluation of Plaintiff was "arbitrary" and was not based on a formal in-class evaluation. *See* Monastra Dep. Tr. pp. 50–52; *see also* 24 P.S. § 11–1122 (rating of teacher's performance should include "classroom observations"). Plaintiff argues that since Defendant has admitted that the first unsatisfactory evaluation was based on an "arbitrary" rating and since Defendant knew that a second unsatisfactory evaluation could potentially lead to Plaintiff's termination, *see* 24 P.S. § 11–1122, a jury could disbelieve that unsatisfactory performance was the actual reason for discharge.

Second, Plaintiff argues that a jury could disbelieve that he was terminated for violating the school's internet usage policy because there is no definitive evidence that he violated the policy. Prior to Plaintiff's termination, the School District hired an outside audit company to analyze Plaintiff's internet usage. This outside company determined that it could not find that Plaintiff violated the School District's internet usage policy.

Finally, Plaintiff argues that a jury could disbelieve that he was terminated because he did not report a bomb threat to the administration. The alleged bomb threat was brought to Plaintiff's attention by one of the students in a keyboarding class. Plaintiff investigated the bomb threat and determined that it was a student prank and, therefore, did not report it to the administration. Plaintiff argues that the evidence demonstrates that there was no School District policy regarding reporting bomb threats or dictating that a teacher must report every such threat to the administration. Further, Plaintiff argues that the deposition testimony demonstrates that student discipline was, in the first instance, left up to the teacher. Therefore, Plaintiff argues that a jury could disbelieve that he was terminated for failure to report the bomb threat in the absence of clear guidelines mandating that he do so.

We find that Plaintiff has presented sufficient evidence to overcome the motion for summary judgment on the retaliation claim. A reasonable jury could conclude that Defendant's explanations for terminating Plaintiff are not worthy of credence and this, in turn, may permit the jury to conclude that unlawful retaliation is the true reason for the termination. *See, e.g., Reeves*, 530 U.S. at 148, 120 S.Ct. 2097 ("a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). Therefore, we deny summary judgment as to the retaliation claim.

### III. *CONCLUSION*

An appropriate Order follows.

### *ORDER*

AND NOW, this day of November, 2001, upon consideration of the Motion for Summary Judgment of Defendants Phoenixville School District, George Rocco, Jay

Hassan, Dr. Robert Urzillo, and Edward Monastra, and the response thereto, it is hereby ORDERED, that the Motion is GRANTED IN PART AND DENIED IN PART as follows:

1) the Motion for Summary Judgment is GRANTED and judgment is entered in favor of the Individual Defendants: George Rocco, Jay Hassan, Dr. Robert Urzillo, and Edward Monastra as a matter of law as to all of Plaintiff's claims;

2) the Motion for Summary Judgment is GRANTED and judgment is entered in favor of the Phoenixville School District as a matter of law as to Plaintiff's race discrimination claims; and

3) the Motion for Summary Judgment is DENIED as to Plaintiff's retaliation claim against the Phoenixville School District.